# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# AT ROME

| | | |
|---|---|---|
| CHRISTOPHER MATTHEW BATTEN | ) | |
| | ) | |
| **Plaintiff,** | ) | Case No. |
| | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| K-VA-T FOOD STORES, INC. d/b/a FOOD CITY | ) ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## COMPLAINT
_____

Christopher Matthew Batten, by and through counsel, hereby sues K-VA-T Food Stores, Inc. d/b/a Food City for disability discrimination and retaliatory discharge under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et. seq., and the Americans with Disabilities Act of 2008, et. seq. For his cause of action, Plaintiff states as follows:

## PARTIES

1. Plaintiff, Christopher Matthew Batten ("Mr. Batten"), is an adult citizen and resident of Hamilton County, Tennessee. Mr. Batten was employed by Defendant from approximately March 2019 to August 2021.

2. Defendant, K-VA-T Food Stores, Inc., d/b/a Food City ("Defendant"), is a Virginia corporation with its Georgia registered agent located at Northwest

Regional Agent Service, Inc., 300 Colonial Center Parkway, Suite 100N, Roswell, GA 30076. Defendant employed Mr. Batten at various locations during his time working for Defendant, but, at all times relevant to this Complaint, Mr. Batten worked at the Food City located at 150 Highway 41, Ringgold, Catoosa County, Georgia 30736.

## JURISDICTION AND VENUE

3. This action raises federal questions over which this Court has jurisdiction pursuant to 42 U.S.C § 12101 et. seq.

4. Venue is proper pursuant to 28 U.S.C § 1390 because Defendant may be found in this District, employment records relevant to Plaintiff's claims of action are maintained in this District, and because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## FACTUAL ALLEGATIONS

5. In 2014, Mr. Batten became disabled following a severe motorcycle accident that occurred in South Carolina.

6. The accident was so severe that Mr. Batten had to undergo over 30 surgeries, including a total arthroplasty of his right hip, eventually leading to the amputation of his dominant right hand and arm at the shoulder.

7. In 2017, Mr. Batten was in a subsequent car accident that duplicated many of the same fractures and required a revision of the right hip arthroplasty.

8. Due to the severity of the accident and the subsequent treatment, Mr. Batten suffers from major depressive disorder, anxiety, chronic pain syndrome, fatigue, isolation, gait instability, problems maintaining balance, and post-traumatic stress disorder ("PTSD").

9. In 2019, Mr. Batten began working for Defendant as a fuel clerk at their location in Ooltewah, Tennessee. From that location, Mr. Batten was transferred to the Food City on East Brainerd Road in Chattanooga, Tennessee before finally settling in at the Ringgold, Georgia location in April 2021. This was Mr. Batten's first job since being in the accident in 2014.

10. Some Food City locations have affiliated gas stations. Fuel clerks like Mr. Batten are stationed inside kiosks near the gas station that cannot be accessed by the general public. Fuel clerks are generally alone in the kiosk for the duration of their shift – only assisting customers who come to the window.

11. Prior to working for Defendant, Mr. Batten had been placed on a years-long waiting list to receive a certified service dog to aid him with his PTSD, isolation, gait and balance problems.

12. In the Summer of 2021, Mr. Batten was notified that he would finally be receiving his certified service dog. Mr. Batten notified Defendant that he would be receiving a service dog and he requested time off to collect the dog and attend the necessary training camp.

13. Mr. Batten's time off request was approved and his last day of work before leaving to collect his service dog was July 9, 2021. Mr. Batten discussed scheduling and working with the service dog with a representative of human resources ("HR") before leaving work that day.

14. On July 20, 2021, Mr. Batten and his new service dog, Mellow Joy ("Mella"), completed training with Canine Assistants, Inc. and returned home. Mr. Batten saw immediate physical and mental health benefits from having Mella.

15. On July 23, 2021, Mr. Batten, with Mella, reported for work as scheduled. Mr. Batten made sure to bring with him all the paperwork provided to him by Canine Assistants, Inc. for his personnel file.

16. When Mr. Batten met with HR to provide them with his documents, the representative acted like they had never heard anything about Mr. Batten receiving a service dog and did not know if Mr. Batten would be allowed to work with Mella.

17. Mr. Batten was allowed to work with Mella from July 23, 2021, through August 5, 2021. Mr. Batten worked in the gas kiosk with Mella on a pillow under the counter. This span of time passed without any incident.

18. On August 6, 2021, Mr. Batten was called into a meeting with management and HR while he was at work. Mr. Batten was informed that he was being suspended until he could return to work without Mella and then he was sent home.

19. Less than one week later, on August 12, 2021, Mr. Batten was called into another meeting. Mr. Batten's manager, David Ellison, notified Mr. Batten that Defendant would not be accommodating Mella and again told Mr. Batten that he could not return to work unless it was without his service dog.

20. Mr. Ellison offered to transfer Mr. Batten to an inside cashier position. Mr. Batten declined the transfer since it would require him to stand for long periods and since he would still not be allowed to have his service dog.

21. Less than one week later, on August 18, 2021, Mr. Batten was called into yet another meeting. At this meeting, Mr. Batten was once again told that Defendant would not be accommodating his service dog. Mr. Batten was also told that he needed to take a personal leave of absence or utilize FMLA leave - but either way he could not return to work with Mella.

22. Mr. Batten was then notified by Defendant that if he did not return the FMLA paperwork they provided to him at this meeting by the following week, they would consider him to be on a personal leave of absence.

23. On August 23, 2021, Mr. Batten contacted Defendant and let them know that he had no desire to take a personal leave of absence, that he had no need or reason to utilize leave pursuant to the FMLA, and that all he wanted to do was to return to work. Once again, Mr. Batten was informed that Defendant would not be

accommodating his service dog and that he could not return to work unless it was without Mella.

24. Mr. Batten was effectively terminated by Defendant on August 6, 2021, when he was suspended and not allowed to return to work. Mr. Batten repeatedly tried to return to work and made Defendant aware of his desire to continue his employment.

25. On October 6, 2021, Defendant sent a letter to Mr. Batten notifying him that his personal leave of absence was approved for August 19, 2021, to November 16, 2021.

26. On April 19, 2022, Defendant sent another letter to Mr. Batten notifying him that his personal leave of absence was approved for the period of November 17, 2021, to February 14, 2022.

27. At no point did Mr. Batten request or need a personal leave of absence from his employment with Defendant. Mr. Batten was capable and able to work with the assistance of his service dog.

28. These letters constituted Defendant's weak attempts to claim that Mr. Batten voluntarily left his employment and to protect themselves from the repercussions of their unlawful behavior.

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

29. Mr. Batten alleges that Defendant discriminated against him and discharged him because of his disability, his record of having a disability, or because Defendant regarded him as having a disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., and the Americans with Disabilities Act of 2008.

30. Mr. Batten alleges that Defendant failed to provide him with reasonable accommodations and failed to comply with the interactive process in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., and the Americans with Disabilities Act of 2008.

31. Mr. Batten alleges that Defendant retaliated against him for engaging in a protected activity related to his disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., and the Americans with Disabilities Act of 2008.

32. At all times herein, Mr. Batten's diagnoses constituted physical and mental impairments that substantially limited one or more of his major life activities, he had a record of having such impairments, and this was apparent to Defendant.

33. Defendant perceived or regarded Mr. Batten's diagnoses as physical and mental impairments that substantially limited one or more of his major life

activities, consistent with the definition of "disability" provided under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq.

34. Despite Mr. Batten's limitations, he was capable of performing the essential functions of a fuel clerk.

35. Defendant had amble notification and information about Mr. Batten's disability and the challenges it posed to him at work.

36. Accommodating Mr. Batten's disability by allowing him to work with his service dog would not have caused any undue hardship on Defendant.

37. At no point did Defendant communicate that accommodating Mr. Batten's disability by allowing him to come to work with his service dog would have caused any undue hardship on Defendant.

38. At all times relevant, Defendant employed over fifteen employees.

39. Mr. Batten filed an EEOC charge in this case on September 30, 2021.

40. On April 28, 2022, the EEOC issued a Determination in which they found that there was reasonable cause to believe that a violation of the Americans with Disabilities Act had occurred. The EEOC also found that there was reasonable cause to believe that Mr. Batten was "denied a reasonable accommodation, suspended, discharged, and retaliated against, all because he requested the use of a service dog."

41. A Notice of Right to Sue letter was issued to Mr. Batten by the EEOC on June 16, 2022. Therefore, Mr. Batten has exhausted his administrative remedies by filing a charge of discrimination with the EEOC.

42. As a result of Defendant's ADA violations, Mr. Batten lost a job he loved, incurred lost wages, and suffered emotional distress, embarrassment, humiliation, and loss of enjoyment of life.

## WHEREFORE PLAINTIFF PRAYS:

A. That Plaintiff be awarded compensation in an amount to be determined at trial for past, present and future wages and benefits, incidental damages, compensation for emotional distress, humiliation, mental anguish, embarrassment, suffering, and other non-pecuniary losses.

B. That the Court award Plaintiff punitive damages.

C. That the Court award Plaintiff the attorneys' fees and costs incurred in prosecuting this action, and other discretionary costs allowed by law.

D. The Court award Plaintiff such other, further and general relief to which he may be entitled.

E. That a JURY be empaneled to try this action.

Respectfully submitted,

**MASSEY & ASSOCIATES, P.C.**

*/s/R. Ethan Hargraves*
R. Ethan Hargraves, GA No. 793839
6400 Lee Highway, Ste. 101
Chattanooga, TN 37421
Ph: 423.697.4529
F: 423.634.8886
ethan@masseyattorneys.com
*Attorney for Plaintiff*