IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
AT ROME

| | | |
|---|---|---|
| CHRISTOPHER MATTHEW BATTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-00179 |
| | ) | |
| K-VAT-FOOD STORES, INC. d/b/a FOOD CITY, | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF IN SUPPORT OF DEFENDANT
K-VA-T'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, the Defendant herein, K-VA-T Food Stores, Inc, d/b/a Food City ("Food City") has MOVED this Honorable Court for summary judgment as to all of the allegations in the Complaint. In accordance with LR 56.1B., Food City submits the following legal authority in support of its Motion:

## I. BACKGROUND AND RELEVANT FACTS

The Plaintiff, Christopher Matthew Batten ("Plaintiff") began his employment with Food City in May 2019 as a part-time fuel clerk at Food City's Store in Ooltewah, Tennessee. (Ex. 1, Plaintiff's depo., p. 22, lines 21-23; p. 37, lines 13-

18)[1]. As of July of 2021, Plaintiff was working as a fuel clerk at Food City's Store #214 in Ringgold, Georgia. (Ex. 1, Plaintiff's depo., p. 45, lines 21-23; Ex. 2, Richards Depo., p. 20, lines 19-23)

From May 2019 through his last day of work in 2021, Plaintiff performed his job as a fuel clerk at various Food City locations in a satisfactory manner. (Ex. 3, Ellison Depo., p. 24, lines 14 to p. 25, line 5). Plaintiff was capable of performing the essential functions of the job of a fuel clerk and had performed that job for approximately two years in a satisfactory manner. (Ex.3, Ellison Depo., p. 24, lines 14 to p. 25, line 5). Plaintiff does not use a cane or any other assistive devices at work. (Ex.1, Plaintiff depo., p. 59, line 12-17; p. 68, lines 12-22).

After two (2) years of satisfactorily performing his job of fuel clerk, on July 23, 2021, Plaintiff reported to work at Food City with his service dog. (Ex.1, Plaintiff depo., p. 65, lines, 22-25). Soon after reporting to work with his service dog, Plaintiff met with Emily Hobbs, HR Coordinator and Gary Richards, Store Manager for the Ringgold location of Food City. (Ex.1, Plaintiff depo., p. 62, lines 19-25.) During their meeting, Plaintiff was advised by Mr. Richards that he (Richards) had never dealt with the issue of bringing a service dog to work. (Ex. 1, Plaintiff depo., p. 66, line 11- 18). Mr. Richards advised Plaintiff that he would need to obtain guidance

[1] Pursuant to this Court's Standing Order, Section II, (h)(i), pages of depositions referenced in the Brief are attached as Exhibits hereto, using the same Exhibit #s as referenced in the Statement of Material Facts.

from Human Resources before he could authorize Mr. Batten to bring his service dog to work. (Ex. 2, Richards Depo., p. 26, line 5 to p. 27, line 25).

As reflected from the facts below, Food City thereafter held three (3) separate meetings with Plaintiff. On August 6, 2021, Plaintiff met with David Ellison and Mr. Richards (Ex.1, Plaintiff depo., p. 67, lines 17-20). David Ellison is now a Senior Human Resources Specialist with Food City, but was the Store Manager at Ooltewah, Tennessee and initially hired Plaintiff for employment with Food City when he applied in May 2019. (Ex. 1., Plaintiff's depo., p. 25, lines 1-25; Ex. 3, Ellison Depo., p.10, lines 11-20; p. 25, lines 19-25).

During the August 6, 2021 meeting, Plaintiff advised David Ellison and Mr. Richards that his concerns and need for the service animal were isolation, stability, anxiety, and being there for stability to help him get up if he falls. (Ex.1, Plaintiff, p. 68, lines 6-11).

During the August 6, 2021 meeting with Mr. Ellison and Mr. Richards, Plaintiff advised them that he still had the ability to perform the same job he had been performing satisfactorily for two (2) years, but that he intended to bring his service dog to work. (Ex.1, Plaintiff depo., p. 70, lines 9-13). At the conclusion of the August 6, 2021 meeting, Plaintiff was taken off work pending further investigation and discussion regarding his request. (Ex.1, Plaintiff depo., p. 70, lines 23-25).

Shortly thereafter, a second meeting took place with Mr. Ellison and Mr. Richards on August 12, 2021, during which Food City discussed the potential alternative accommodation to Plaintiff as the position of a USCAN cashier. (Ex.1, Plaintiff depo., p. 72, line 23 to p. 73, line 14). The duties of a USCAN cashier generally are to make sure store customers in the self-check-out lines are getting checked out right, to check ID if individual customers are buying alcohol. (Plaintiff depo., p. 73, lines 15-21). Plaintiff has testified that he considered discussion of the USCAN position to be “dead on arrival” in terms of an option and that regardless of the position Food City offered him, he intended to bring his dog to work. (Ex. 1, Plaintiff depo., p. 73, line 4; p. 74, lines 16-21).

During the August 12, 2021 meeting, Plaintiff made it clear to Mr. Ellison and Mr. Richards that regardless of the job he was assigned to, whether the job was in-store, or out of the store, his service dog was going to be there. (Ex. 1, Plaintiff depo., p. 74, lines 16-25). Plaintiff has testified that there would not have been any accommodation that Food City could have offered him that did not include the dog being present that would have been acceptable to him. (Ex.1, Plaintiff depo., p. 75, lines, 5-9) and that he told both Mr. Ellison and Mr. Richards that there was no type of job that Food City could offer that would be acceptable to him that did not include the dog being present. (Ex.1, Plaintiff depo., p. 75, lines 12-23).

At a Food City store, there are a number of options that Food City could have

provided other than allowing Plaintiff to bring his service dog to work, such as working the self-checkout operator (USCAN cashier position) with a cane or a stool. (Ex. 4, Lyons depo., p. 39 line 21 to p. 40 line 7).

The decision not to move forward with the service dog request of Plaintiff was made by Donnie Meadows, Vice President of Human Resources for Food City. (Ex.5, Meadows Depo., p. 40, lines 4 – 17). Plaintiff was “just not open to any solution other than the service animal” and effectively gave Food City an ultimatum that he either brings his service animal to work or he wouldn't be at work. (Ex.5, Meadows, Depo., p. 41, lines 12-24).

During Plaintiff’s meeting with David Ellison on August 12, 2021, Plaintiff “immediately shot down” the discussion regarding the USCAN position as an alternative to his service dog and as a result of Plaintiff’s position, Food City did not continue the discussion regarding that position so as to offer the use of a chair, stool or cane. (Ex.3, Ellison Depo., p. 45, line 9 to p. 46, line 4). Mr. Meadows’ decision was to discuss alternatives with Plaintiff and move forward with a different accommodation for Plaintiff other than the service dog. (Ex.5, Meadows Depo., p. 40, lines 6-9).

During the meeting with Plaintiff on August12, David Ellison advised Plaintiff that his request to work with his service dog would not be approved. (Ex.3, Ellison depo., p. 42, lines 14-17).

In response to questioning from Plaintiff's counsel, Mr. Meadows' testified that his decision to deny the presence of the service dog was based on the fact that Plaintiff could perform the job and had been doing so for a couple of years, that the main thing he was requesting was to provide stability but that he was not open to any solution other than the service animal and effectively gave Food City an ultimatum that he either brings his service animal to work or he wouldn't be at work. (Ex.5, Meadows Depo., p.41, lines 1- 23). Food City was willing to provide Plaintiff an accommodation, but one that was different than his request for a service dog. (Ex. 5, Meadows Depo., p. 42, lines 8-12).

As of August 18, 2021, Food City placed Plaintiff on a leave of absence the purpose of which was to allow Plaintiff time to reconsider and engage in further discussion with Food City to identify other alternatives that would meet his needs besides the service dog, such as the USCAN position. (Ex.5, Meadows Depo., p. 83, lines 12-18).

Plaintiff was separated from his employment with Food City on February 14, 2022. (Ex.3, Ellison Depo., p. 62, lines 6-17). Plaintiff was separated from employment with Food City when he did not return to work at Food City after the leave of absence was exhausted. (Ex.3, Ellison Depo., p. 63, Lines 7-16).

## II. STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings, depositions and affidavits show that no genuine issue of material fact exists for trial and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

The Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Act (collectively "ADA"), prohibits employers from discriminating against qualified individuals with a disability in any aspect of employment. 42 U.S.C. §12101 *et seq*. The ADA requires employers to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with disability unless it would cause an undue hardship on the employer's business operations. 42 U.S.C. §12112(b)(5)(A).

In this case, the Plaintiff alleges that his employer, Food City, failed to provide a reasonable accommodation in response to his request to bring his service dog to work, that Food City failed to comply with the interactive process as required under the ADA and that Food City retaliated against him for engaging on a protected activity under the ADA. (Doc. #1, Complaint, ¶¶ 30, 31). As shown below, the undisputed material facts and applicable authority do not support Plaintiff's allegations and instead demonstrate that Food City is entitled to summary judgment as a matter of law as to all of Plaintiff's claims.

## III. APPLICABLE LAW AND AUTHORITY

To establish a *prima facie* case of discrimination under the ADA based on a failure to provide a reasonable accommodation, the plaintiff must show: (1) he is a qualified individual with a disability; (2) that, with or without reasonable accommodations, he can perform the essential functions of the job; and (3) he was discriminated against because of his disability. Callahan v. Emory Healthcare, 2021 U.S. Dist. LEXIS 39467, *46 (N.D. Ga. 2021), recommendation for summary judgment adopted, 2021 U.S. Dist. LEXIS 38010, 2021 WL 732352 (N.D. Ga., Feb 10, 2021). The ADA provides that an employer unlawfully discriminates against a qualified individual when the employer fails to provide a "reasonable accommodation" unless the accommodation would impose an undue hardship. 42 U.S.C. §12112(b)(5)(A). Callahan, supra, at *56, citing Anderson v. Embarq/Sprint, 379 Fed. Appx. 924, 927, 2010 U.S. App. LEXIS 10342, *5, 23 Am. Disabilities Cas. (BNA) 813 (11th Cir. 2010) (An accommodation is "reasonable," and therefore required under the statute, "only if it enables the employee to perform the essential functions of the job", quoting Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1256 (11th Cir. 2007).

The duty of an employer to engage in an interactive process originates in the federal regulations implementing the ADA. 29 CFR §1630.2(o)(3) states as follows:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process

with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. §1630.2(o)(3)

Plaintiff filed this case alleging violations of the ADA, raising issues such as reasonable accommodations, interactive processes and alleging discrimination and retaliation on the basis of Plaintiff's disability. For purposes of this Motion, Food City does not contest that Plaintiff has one or more disabilities. In fact, Plaintiff was hired in May of 2019 with Food City's awareness that he had a disability in that he did not have the use of one arm. Plaintiff had satisfactorily performed the essential functions of the job of fuel clerk for two (2) years when on July 23, 2021, Plaintiff presented at work with his service dog. From that point forward, nothing would satisfy Plaintiff but that he be allowed to bring his service dog to work. Plaintiff claimed that his service dog assisted him with stability issues, but during the two years of working as a fuel clerk for Food City, there was no indication that he needed accommodation for any reason. In fact, Plaintiff has admitted in his testimony that he advised Food City that nothing in his job had changed and that he was still able to perform the essential functions of his job as before – he just wanted to have his service dog.

A. PLAINTIFF DID NOT REQUIRE AN ACCOMMODATION.

The Plaintiff herein did not require an accommodation to perform his job as

fuel clerk with Food City. He had satisfactorily performed the job for over two (2) years. The Eleventh Circuit Court of Appeals has held that "if an employee does not require an accommodation to perform (her) essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided." D'Onofrio v. Costco Wholesale Corp., 964 F.3d 1014, 1022 (11th Cir., 2020), cert. denied, 2021 U.S. LEXIS 826 (U.S. Feb. 22, 2021).

In D'Onofrio v. Costco Wholesale Corp., *supra*, the plaintiff alleged she had been discriminated against on the basis of her disability, which was deafness. The plaintiff began working in 1989 at Costco's warehouse, performed satisfactorily for about 14 years, never had difficulty communicating and never filed any complaints internally. In 2012, when she began having communication difficulties with a supervisor, Pack, she complained and requested that Pack be transferred, and that Costco train all managers on deaf culture. D'Onofrio, 964 F.3d 1014, 1017. Costco then took significant measures to address D'Onofrio's requests including installation of special equipment and conducting deaf-culture training of its managers in March of 2013.

Ultimately, plaintiff rejected these steps and instead refused to communicate with supervisor Pack. After several work-related conduct issues, she was terminated in October of 2013 and brought suit under the ADA and Florida state law, which is

analyzed under the same framework as the ADA.

At the trial of the case, the jury found in favor of Costco on the issue of termination and retaliation but found that Costco had failed to accommodate her disability. D'Onofrio, 964 F.3d 1014, 1021. In short, the District Court granted Costco's Motion for Judgment as a matter of pursuant to Fed. R. Civ. P. 50(a), and plaintiff appealed. The Eleventh Circuit affirmed the District Court's decision to grant Costco's motion for judgment as matter of law. D'Onofrio, 964 F.3d 1014, 2020 U.S. App. LEXIS 20869, cert. denied, 2021 U.S. LEXIS 826 (U.S. Feb. 22 2021).

The D'Onofrio case is factually similar to the case before this Court because Plaintiff herein, like D'Onofrio, performed his job for two (2) years without incident. Even today, he does not allege any issues or limitations in performing the essential job duties of fuel clerk. Like the plaintiff in D'Onofrio, Plaintiff herein seeks one particular accommodation of bringing his service dog to work, claiming the service dog is necessary to address physical and mental limitations which Plaintiff has had during the entire time of his employment but which have presented no issues with respect to his work performance.

Finally, as in D'Onofrio, Plaintiff herein has not actually requested an accommodation as such but has instead presented Food City with an ultimatum that he be allowed to bring his service dog to work. Such circumstances do not trigger

ADA-related obligations for the employer because the employee is not requesting an accommodation that is necessary to perform his job. An accommodation is reasonable and necessary under the ADA only when it enables the employee to perform the essential functions of the position. McKane v. UBS Fin. Servs., Inc., 363 Fed. Appx. 679, 681, 2010 U.S.App. LEXIS 1386, **4 (11th Cir. 2010); Holly v. Clairson Industries, LLC, 492 F.3d 1247, 1255 (11th Cir. 2007); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249 (11th Cir. 2001).

Under applicable Eleventh Circuit authority, the Plaintiff's request to work with his service dog was not a reasonable and required accommodation under the ADA because it was not necessary in order for Plaintiff to perform the essential functions of the fuel clerk position. Based on the foregoing authority, Food City is entitled to summary judgment as a matter on this issue.

## B. FOOD CITY DID NOT FAIL TO ENGAGE IN THE INTERACTIVE PROCESS.

Plaintiff claims Food City violated the ADA by failing to engage in the interactive process, however, it was Food City who initiated the interactive process to explore the reasons Plaintiff felt he needed to bring his service dog to work. Plaintiff did not request Food City to provide a reasonable accommodation to address a particular limitation in his job performance; rather he simply showed up to work on July 23, 2021 with his service dog and claimed she was necessary for his

stability, despite the fact that there had been no performance issues in the two (2) years of Plaintiff's work as a fuel clerk.

After Plaintiff brought his service dog to work on July 23, 2021, Food City engaged in three (3) separate meetings with Plaintiff in an effort to gather information from him, understand the need for Plaintiff's service dog and to explore potential alternative accommodations. Despite these efforts, as Plaintiff has testified, he made it clear to Food City that the only option he would consider was bringing his service dog to work. At that point, it was evident that no further options were going to be considered by Plaintiff as alternatives to bringing his service dog to work.

In the case of Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278 (11th Cir. 1997), the Eleventh Circuit Court of Appeals specifically noted that "liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide(s) accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process. Stewart, 117 F.3d 1278, 1287, 1997 U.S. App. LEXIS 18981 (11th Cir. 1997), citing, Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996)("liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown").

In this case, it was clear that what Plaintiff wanted was not a "reasonable

accommodation," nor did he want to engage in an interactive process with Food City to identify an alternative to bringing his service dog to work. In his deposition testimony, Plaintiff has admitted that he made it clear to Food City in his discussions with Mr. Ellison and Mr. Richards that nothing was going to satisfy him other than being allowed to bring his service dog to work. (Exhibit 1, Plaintiff depo., p. 75, lines 5-23; Ex. 3, Ellison, Depo., p. 57, lines 2-7; Ex. 4., Lyon depo., p. 42, lines 1-13).

Thus, the breakdown in the interactive process in this matter was not due to any failure on the part of Food City but rather was due to Plaintiff's refusal to entertain any alternative accommodations besides bringing his service dog to work.

Based on the undisputed material facts and the forgoing authority, Food City is entitled to summary judgment as a matter of law on this issue.

C. PLAINTIFF WAS NOT ENTITLED TO THE ACCOMMODATION OF HIS CHOICE.

Even if it is presumed that Food City was obligated under the ADA to provide a reasonable accommodation to the Plaintiff, the ADA does not impose liability on an employer for failure to provide the accommodation particularly desired by an employee; rather the ADA only requires the employer to provide a reasonable accommodation. Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278; 1997 U.S. App. LEXIS 18981 (11th Cir. 1997).

The undisputed material facts show the Plaintiff would not consider any alternatives to bringing his service dog to work and that he made this clear to Food City during the three (3) meetings Food City initiated with Plaintiff. As noted in Food City's Statement of Material Facts and attached Exhibits hereto:

During the August 12, 2021 meeting with Mr. Ellison and Mr. Richards, Plaintiff made it clear to Mr. Ellison and Mr. Richards that regardless of the job he was assigned to, whether the job was in-store, or out of the store, his service dog was going to be there. (Ex. 1, Plaintiff depo., p. 74, lines 16-25).

Plaintiff made it clear to Food City that he would not accept any accommodation or position that did not include bringing the dog to work with him. (Ex.4., Lyons depo., p. 42, lines 1-13). Plaintiff has testified that there would not have been any accommodation that Food City could have offered him that did not include the dog being present that would have been acceptable to him. (Ex.1, Plaintiff depo., p. 75, lines., 5-9; Ex.3., Ellison depo., p. 57, 2-7).

Plaintiff has testified that he made it clear to Mr. Ellison and Mr. Richards that there was no type of job that Food City could offer that would be acceptable to him that did not include the dog being present. (Ex.1, Plaintiff depo., p. 75, lines 12-23). Under the ADA, "the use of the word "reasonable' as an adjective for the word "accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." Stewart v. Happy

Herman's Cheshire Bridge, 117 F.3d 1278, 1285, citing Lewis v. Zilog, Inc., 908 F. Supp. 931, 947 (N.D.Ga.1995).

As the Eleventh Circuit Court of Appeals discussed in Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278; 1997 U.S. App. LEXIS 18981 (11th Cir. 1997), "This is so because the word "reasonable" would be rendered superfluous in the ADA if employers were required in every instance to provide employees "the maximum accommodation or every conceivable accommodation possible." Stewart, supra, 117 F.3d 1278, 1285, citing, Lewis, 908 F. Supp. at 947; and Vande Zande v. State of Wis. Dept. of Admin., 851 F. Supp. 353, 360 (W.D.Wis.1994) ("an employee is entitled only to a reasonable accommodation and not to a preferred accommodation"), aff'd, 44 F.3d 538 (7th Cir.1995).

D. THERE IS NO EVIDENCE OF RETALIATION.

In Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278 at 1287, the Eleventh Circuit reviewed the elements to a claim of retaliation under the ADA, using the same analysis as used under Title VII:

> To establish a *prima facie* case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. See Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.1993) (explaining requirements to show retaliation in the Title VII context). Once a *prima facie* case is established, the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation. See Goldsmith, 996 F.2d 1155, at 1163. The plaintiff must then demonstrate that it will be able to establish at trial that the

> employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation. Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 440 (11th Cir.1996).

Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278, 1287; 1997 U.S. App. LEXIS 18981 (11th Cir. 1997).

In this case, Plaintiff was not separated from his employment in retaliation for making a request for an accommodation. Plaintiff was separated from his employment after he exhausted all forms of leave available and did not return to work at Food City. Plaintiff would not consider alternatives to bringing his service dog to work and even after being provided a leave of absence, he did not indicate any inclination in returning to work unless it was with his service dog. There is no evidence that Food City retaliated against Plaintiff in violation of the ADA. Rather, the undisputed material facts simply show an employee who refused to return to work at Food City unless he could bring a service dog to work with him.

Plaintiff was a satisfactory employee and Food City had no intent or desire to separate Plaintiff from employment, as evidenced by Food City's efforts to engage Plaintiff in three (3) separate meetings concerning the issues related to bringing his dog to work. Food City was certainly not unwilling to explore reasonable accommodations with Plaintiff, but Plaintiff was only willing to return to work if Food City agreed to the accommodation he proposed. When Plaintiff failed to return to work at Food City after exhausting his leaves of absence, Food City removed him from employment.

## IV. CONCLUSION

Plaintiff never requested that he be provided a reasonable accommodation from Food City in order to address a disability; instead, after satisfactorily performing his job for two (2) years with no issues, Plaintiff arrived at work one day along with his service dog. Plaintiff stated the service dog was needed for stability and he essentially refused to work at any position unless he could do so with his dog.

Food City conducted three (3) separate managerial meetings with Plaintiff in an attempt to address alternative accommodations with Plaintiff but he has repeatedly testified that he made it clear to Food City that he would not accept any position with Food City that did not include bringing his service dog to work. As such, this was not a request for a reasonable accommodation; rather, the presence of Plaintiff's service dog was an unwavering condition precedent to continuing his employment with Food City, regardless of this job.

Food City complied with all the requirements under the ADA by initiating and engaging in the interactive with the Plaintiff and by attempting to identify and offer alternative accommodations to Plaintiff. Based on the undisputed material facts as set forth in Defendant's accompanying Statement of Material Facts which is incorporated herewith, and the applicable law, Food City is entitled to summary judgment as a matter of law as to all of Plaintiff's claims.

Respectfully submitted this 11th day of April, 2023.

/s/Howard B. Jackson
Howard B. Jackson, BPR # 021316
hjackson@wimberlylawson.com
Wimberly Lawson Wright Daves
& Jones PLLC
550 W. Main Ave, Suite 900
Knoxville, TN 37902
(865) 564-1000 Telephone
(865) 546-1001 Facsimile

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Brief in Support of Motion for Summary Judgment to Plaintiff was served this 11th day of April 2023, by United States First Class Mail and email on the following:

Ethan Hargraves
Massey and Associates, P.C.
6400 Lee Highway, Suite 101
Chattanooga, TN 37421
amandaj@masseyattorneys.com

s/Howard B. Jackson
Howard B. Jackson, # 021316

CERTIFICATION OF COMPLIANCE

The undersigned hereby certifies compliance with LR 5.1(B) regarding Font and Point selections as well as all other Local Rules of this Court.

/s/ Howard B. Jackson
Howard B. Jackson BPR ## 021316