# EXHIBIT 4

# DEPOSITION OF LYON

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA AT ROME

---

| | | |
|---|---|---|
| CHRISTOPHER MATTHEW BATTEN, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | NO. |
| | : | 4:22-CV-00179 |
| K-VAT-FOOD STORES, INC., d/b/a | : | |
| FOOD CITY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

---

THE VIDEOTAPED DEPOSITION OF
SHERRELL LYON, JR.
January 12, 2023

---

Whitney A. Vaughn, TN LCR# 418
Angel & Associates Court Reporting
P.O. Box 1145
Hixson, Tennessee 37343
(423) 876-4435 and 800-298-DEPO (3376)

**Q Okay. To your knowledge, had that decision changed?**

A To my knowledge, no.

**Q Okay. So as of -- as of the date that you were speaking with Ms. Estep, you were aware that Mr. Batten could not return with his service animal?**

A I was aware of the decision that had been made.

**Q And he -- and had been communicated to Mr. Batten that he could not return with his service animal?**

A At that time, yes.

**Q Do you know now when the decision was made to deny Mr. Batten's request for the use of his service dog?**

A Do I know when? I do not know when.

**Q Sitting here today, can you think of any reason why it would have been an undue burden on Food City to allow Mr. Batten to work as a fuel clerk with his service dog?**

A From my -- from reading the documents, there was options that were offered to Mr. Batten that would have been considered a reasonable accommodation including self-checkout operator inside the store, even potentially with a cane, with a

stool, but I don't think that was ever reached because it -- from me reading the documents, there was kind of a line drawn in the sand as to if I don't have this, I'm not going to work. If I don't have a service dog, I'm not going to work. So I think once that line was drawn in the sand, there was no further communication. He refused to work.

**Q Okay. Mr. Batten indicated that he was not able to work without his service animal; is that correct?**

A Not the way I understand it. From the way I understand -- from my interactions with David and writing the EEOC response, it was if I don't have the dog, I'm not going to work.

**Q Did you understand that the dog helped Mr. Batten with stability issues?**

A From the EEOC response, that Mr. Batten said that he had a need for an accommodation for stability, which could have been provided in many ways including a cart, a cane. There is many ways to accommodate that, but it never got to that point.

**Q In response to Mr. Batten's request for the use of his service animal, did Food City offer Mr. Batten a cart?**

**Q Did Mr. Batten prevent them from offering that to him?**

A I wasn't at all those meetings during the exchange, but from the way I understand David's statement, no, we didn't have the opportunity to.

**Q What do you mean he didn't have an opportunity to?**

A From the -- from my recollection of the statement from David was that when he -- when he had his discussion with Mr. Batten, that Mr. Batten said that he was not going to work without the dog.

**Q Okay.**

A And that kind of ended the exchange.

**Q Do you know if it was ever Food City's intent to offer Mr. Batten the use of a stool in the USCAN position?**

A I would hope so. Our intent is always to try to provide an accommodation for someone to help them perform their job if it's reasonable.

**Q And I'm not trying to be picky, and I understand what you're saying. But I got to know if it, in fact, was Food City's -- to your knowledge, if it was, in fact, Food City's intent to offer Mr. Batten the use of a stool in the USCAN attendant position.**