# EXHIBIT 5

# DEPOSITION OF MEADOWS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MATTHEW BATTEN, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CIVIL ACTION FILE NO. 4:22-CV-00179 |
| K-VA-T FOOD STORES, INC. d/b/a FOOD CITY, | ) | |
| Defendant. | ) | |

JANUARY 27, 2023

**ZOOM DEPOSITION OF DONNIE MEADOWS**

APPEARING FOR THE PLAINTIFF:

R. ETHAN HARGRAVES, ESQUIRE
MASSEY & ASSOCIATES
6400 LEE HIGHWAY, SUITE 101
CHATTANOOGA, TENNESSEE 37421

APPEARING FOR THE DEFENDANT:

HOWARD B. JACKSON, ESQUIRE
WIMBERLY LAWSON WRIGHT DAVES & JONES
550 MAIN STREET, SUITE 900
KNOXVILLE, TENNESSEE 37902

ALSO PRESENT: CHRISTOPHER BATTEN

**CATHY H. KERLEY, RPR**
**HALL & ASSOCIATES**
**POST OFFICE BOX 428**
**CHATTANOOGA, TENNESSEE 37401**
**423-267-4328**

Q Okay. And can you tell us what were the reasons -- reason or reasons for your decision to deny the requests for the use of his service dog.

A So based off of the statements that were given to Mr. -- let's see, Mr. Batten told Mr. Ellison that he could perform the job and Mr. Ellison acknowledged that he had been performing the job, I believe, for a couple of years.

The main thing that he was requesting was provide some stability. And I don't believe he was -- he would even allow us to further discuss that during our informal exchange with him when we talked about an alternative accommodation being a similar type job, but allowing him to move to inside the store from the fuel kiosk as a Uscan cashier.

And Mr. Batten was just not open to any solution other than the service animal and effectively, as I recall, gave us an ultimatum. He either brings his service animal to work or he wouldn't be at work.

And that led to granting him personal leave just honestly to provide an opportunity to

recommendation that we place him on leave after he refused to consider the accommodation that we served up.

Q Okay. Who made the decision to deny Mr. Batten's request for the use of a service dog?

A That would have been -- I made the decision to Mr. Ellison. My recommendation was that we not move forward with the service dog, but we move forward with a different accommodation.

Q Okay. I'm not trying to -- I'm not trying to beat a dead horse. I just want to make sure I understand who the decision-makers were. Did you make the decision and relay that to Mr. Ellison or did you and Mr. Ellison make the decision together?

A I made the decision based off of information provided to me from Mr. Ellison.

Q Okay. Did anyone else provide information to assist in your making that decision?

A General counsel.

Q Okay. Do you remember, if you can, when the decision was made to deny Mr. Batten's request?

A No. I don't remember.

save his job, give him a chance to reconsider either going the current role or accepting the assignment as the Uscan cashier.

Q Based off of the training material in Exhibit 2, would you agree that it would have been Food City's position that Mr. Batten was a qualified employee?

A Mr. Batten was a satisfactory employee performing essential functions of his job without any accommodation and we were willing to give him an accommodation, but different than his request.

Q Let me ask a better question. Referring to Exhibit 2, specifically the definition of qualified employee, since you've said Mr. Batten was able to perform the essential functions of his job without accommodation, would he still be considered a qualified employee?

A Yes. There was no question about whether he was a qualified employee.

Q Okay. And I mean a qualified employee specifically with regard to Food City's ADA compliance.

A I'm not sure I follow the clarification you're seeking there.

A Again, that wasn't the purpose.
Q Well, sir, I'm not asking you about the purpose. I'm asking you if there was anything, any facts, any statement, anything at all that gave you the impression that Mr. Batten would not need the service dog at the end of a leave of absence?
A If Mr. Batten had given further consideration to alternative accommodations, maybe that would have satisfied the need for his initial request, so.
Q Okay. So was it at least part of the purpose behind the leave of absence to allow Mr. Batten the time to reconsider and accept the Uscan position?
A To reconsider and engage in further discussion if there were other alternatives that would meet his needs.
Q Okay. You would agree that he had kind of said the last word on Uscan position, right, that he couldn't do it because it was a standing position?
A According to the document.
Q Okay. And the leave of absence was at least in part so that that exchange could