**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**AT ROME**

| | | |
|---|---|---|
| **CHRISTOPHER MATTHEW BATTEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 4:22-cv-00179** |
| | ) | |
| **v.** | ) | **JURY DEMANDED** |
| | ) | |
| **K-VA-T FOOD STORES, INC. d/b/a FOOD CITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Christopher Matthew Batten, by and through undersigned counsel, hereby files this Memorandum of Law in Opposition to Defendant's Motion to Summary Judgment.

## I. FACTUAL BACKGROUND

Matthew Batten was involved in a horrific motorcycle crash in 2014. (Batten Affidavit [1]¶ 2). The crash caused Mr. Batten to need dozens of surgeries to install hardware and screws throughout the right side of his body. (Batten Affidavit ¶ 3). Eventually, the injuries he suffered in the crash caused Mr. Batten to have to have

[1] All references to "Batten Affidavit" are to the Affidavit of Christopher Matthew Batten are attached as **Exhibit A**, which is being filed herewith.

his right arm amputated. (Batten Affidavit ¶ 4). Mr. Batten has a neurostimulator implant for pain. (Batten Dep[2]. 59:12-60:6). Mr. Batten needs a job with a chair and the ability to sit down because of his condition. (Batten Dep. 20:24-21:19). Mr. Batten has an altered gait as a result of his condition. (Batten Dep. 21:5-11).

During the almost three years that Mr. Batten worked for Food City, he was able to perform the essential functions of his position, but doing so caused him constant pain. Furthermore, performing the essential functions of his job put him at risk for falling and injuring himself because of the effects that his disability have on his ability to ambulate. (Batten Affidavit ¶ 17).

Parts of Mr. Batten's job with Defendant were particularly painful to perform because of his condition. (Batten Dep. 29:6-19). On multiple occasions while performing his job for Defendant, Mr. Batten has stumbled and fallen. (Batten Dep. 31:20-32:13, 84:6-20). Mr. Batten's difficulty in performing some tasks of his job remained consistent during his employment with Defendant. (Batten Dep. 34:20-25).

Working in the fuel kiosk gave Mr. Batten the needed opportunity to sit or stand as needed for his condition. (Batten Dep. 35:6-12). Mr. Batten had put in his

---

[2] All references to "Batten Dep." are to the deposition of Christopher Matthew Batten, which was taken on January 11, 2023. Cited excerpts from this deposition are attached as **Exhibit B**, which is being filed herewith.

request for a service dog around the beginning of 2017, before he started working for Defendant. (Batten Dep. 60:19-25, 86:1-6).

On August 6, 2021, Mr. Batten met with Mr. David Ellison and Gary Richards. (Batten Affidavit ¶ 5). During that meeting, Mr. Ellison asked Mr. Batten about his ability to do his job. (Batten Dep. 69:11-14). In that August 6 meeting, Mr. Batten told Mr. Ellison that he had issues related to anxiety, isolation, and stability. (Batten Affidavit ¶ 6). In that August 6 meeting, Mr. Batten told Mr. Ellison that he had fallen "maybe five times" while at work because of the stability issues caused by the extensive hardware in the right side of his body. (Batten Affidavit ¶ 7; Ellison Dep[3]. 36:1-15).

In that August 6 meeting, Mr. Batten told Mr. Ellison that his service animal can detect when Mr. Batten is beginning to have a "lock down panic attack" and can assist him with that. (Batten Affidavit ¶ 8). In that August 6 meeting, Mr. Batten told Mr. Ellison that his service animal provided stability to prevent falls and also was there to help him get back up if necessary. (Batten Affidavit ¶ 9; Ellison Dep. 36:18-23, 37:4-10). In fact, Mr. Batten's service dog is specifically trained to help him as a "stabilizer" and to help him get back up if he falls. (Batten Dep. 85:9-17).

[3] All references to "Ellison Dep." are to the deposition of David Gary Ellison, which was taken on January 11, 2023. Cited excerpts from this deposition are attached as **Exhibit C** which is being filed herewith.

On August 12, 2021, Mr. Batten met with Mr. David Ellison and Gary Richards. (Batten Affidavit ¶ 10). In that August 12 meeting, Mr. Ellison told Mr. Batten that the request for his service animal was being denied. (Batten Affidavit ¶ 11). In that August 12 meeting, Mr. Ellison offered Mr. Batten a position inside the store in the USCAN Cashier position to help with Mr. Batten's anxiety. (Batten Affidavit ¶ 12). The USCAN position did not accommodate Mr. Batten's instability issues related to his disability. (Richards Dep[4]. 56:3-6).

In response to the offer of the USCAN Cashier position, Mr. Batten told Mr. Ellison that he has screws and hardware throughout the right side of his body as well as Complex Regional Pain Syndrome. (Batten Affidavit ¶ 13). Mr. Batten told Mr. Ellison that "standing for an extended period of time doesn't work." (Batten Affidavit ¶ 14). Mr. Batten told Mr. Ellison that he could not physically perform the USCAN Cashier position. (Batten Affidavit ¶ 15). Before the August 12, 2021 meeting ended, Mr. Batten told Mr. Ellison "I guess, at this time, I have to wait for whatever you guys come up with . . . ." (Batten Affidavit ¶ 16).

The Gas 'N' Go fuel clerk position was the only position offered by Defendant that allowed Mr. Batten to sit and stand as needed for his disability. (Richards Dep. 56:7-10). Without modifications, the USCAN Attendant position is an all-standing

[4] All references to "Richards Dep." are to the deposition of Gary Richards, which was taken on January 12, 2023. Cited excerpts from this deposition are attached as **Exhibit D**, which is being filed herewith.

position that does not utilize a chair or stool. (Richards Dep. 55:2-7, 57:2-5; Ellison Dep. 45:3-5; Meadows Dep[5]. 71:9-13; Food City 30(b)(6) Dep[6]. 58:23-59:2).

Mr. Batten did not give Defendant an ultimatum. Mr. Batten said that the USCAN position would not work for him because he could not physically do it, and could not "be on his feet for prolonged periods of time." (Ellison Dep. 45:6-16, 47:18-23, 51:15-20). Mr. Batten made it abundantly clear that he had a physical condition that would prevent him from standing for long periods of time in the USCAN Attendant position. (Food City 30(b)(6) Dep. 61:3-7; 65:19-23).

At no time did Defendant offer to modify the USCAN position to allow Mr. Batten the use of a chair, stool, or other assistive device. (Food City 30(b)(6) Dep. 59:6-10, 61:8-62:7; Ellison Dep. 45:24-46:1). Defendant never had any plan or intention to offer Mr. Batten a stool, chair, cane or other assistive device in the USCAN Attendant position. (Food City 30(b)(6) Dep. 63:9-24; Ellison Dep. 46:5-9).

---

[5] All references to "Meadows Dep." are to the deposition of Donnie Meadows, which was taken on January 27, 2023. Cited excerpts from this deposition are attached as **Exhibit E** to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which is being filed herewith.

[6] All references to "Food City 30(b)(6) Dep." are to the deposition of Food City's Corporate Representative Sherrell Lyon, Jr., which was taken on March 3, 2023. Cited excerpts from this deposition are attached as **Exhibit F** to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which is being filed herewith.

Donnie Meadows was the Defendant's Vice President of Human Resources. (Meadows Dep. 12:7-9). Mr. Meadows made the ultimate decision to deny Mr. Batten's request for the use of his service animal. (Meadows Dep. 40:4-17). Mr. Meadows admitted that Mr. Batten was a "qualified employee" under Defendant's ADA policy. (Meadows Dep. 42:21-43:12).

Mr. Meadows admitted that the decision to deny Mr. Batten the use of his service animal was not made based on a finding that it would have constituted an undue burden to Defendant. (Meadows Dep. 43:22-44:6). Neither Mr. Meadows nor anyone else at Food City ever made the determination that Mr. Batten's use of the service dog would constitute *any* burden on Food City, undue or otherwise. (Meadows Dep. 45:12-19). In fact, Mr. Meadows stated that he had absolutely no problem with Mr. Batten's use of his service animal. (Meadows Dep. 44:23-45:1).

Prior to denying Mr. Batten's request for the use of his service dog, Food City never made or communicated a determination that Mr. Batten's use of his service dog would cause an undue hardship on Food City. (Food City 30(b)(6) Dep. 39:7-20). The Store Manager, Gary Richards, could not think of any reason why it would be a problem for Mr. Batten, as the fuel clerk, to have his service animal with him in the kiosk. (Richards Dep. 29:25-30:7).

Prior to Mr. Batten's request being formally denied, Mr. Batten was allowed to bring his service dog to work with him for about a week. (Richards Dep. 37:7-16,

40:25-41:10). Mr. Batten worked for a full week with his service dog without incident before Defendant decided to deny his request to have the service dog. (Richards Dep. 54:3-6).

Defendant understood Mr. Batten's request for a service animal as it pertained to his disability related to his anxiety, isolation, and stability. (Food City 30(b)(6) Dep. 57:6-10). Defendant understood that any proposed accommodation would need to address Mr. Batten's anxiety, isolation, and stability. (Food City 30(b)(6) Dep. 57:11-15).

Mr. Meadows testified that Defendant offered Mr. Batten the alternative accommodation of the USCAN position to "meet his need for stability." (Meadows Dep. 45:20-46:2). Defendant knew, however, that without modification, the USCAN Attendant position would not address Mr. Batten's stability concerns. (Food City 30(b)(6) Dep. 62:8-12; Richards Dep. 56:3-6).

After Mr. Batten informed Defendant that the USCAN position was not appropriate because he couldn't physically stand all the time, Defendant never responded with any proposed modification to the USCAN position. (Meadows Dep. 100:21-101:6). Mr. Batten was terminated by Defendant effective February 14, 2022, for failing to return from leave. (Ellison Dep. 62:6-63:16).

Defendant selected a non-disabled employee to fill Mr. Batten's position as the Fuel Clerk after he was terminated. (Food City 30(b)(6) Dep. 70:12-19).

## II. SUMMARY JUDGMENT STANDARD

The granting of a motion for summary judgment is "**only appropriate** when 'there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1264 (11th Cir. 1999) (emphasis added) (quoting Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the non[] moving party.'" *Rogers v. Mentor Corp*., 682 Fed. Appx. 701, 708 (11th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In examining the record on such a motion, the Court views the evidence in "the light most favorable to the non-moving party." *Schoenfeld*, 168 F.3d at 1264, and resolves all reasonable doubts in favor of the non-moving party. *Change v. Midtown Neurology*, *P.C.,* No. 1:19-cv-00885-SCJ, 2021 U.S. Dist. LEXIS 115658, at *6 (N.D. Ga. 2021). Granting a motion for summary judgment is only appropriate "if a case is 'so one-sided that one party must prevail as a matter of law.'" *Rogers*, 682 Fed. Appx. at 708 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III. APPLICABLE LAW

**McDonnel Douglas**

In employment discrimination and retaliation cases, Plaintiffs may rely on direct or indirect evidence of discrimination to support their claims. *de la Cruz v.*

*Children's Trust*, 843 F. Supp. 2d 1273, 1281 (S.D. Fla. 2012). Where a plaintiff relies on indirect (circumstantial) evidence, the claim is generally subject to the burden-shifting analysis outlined by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wilson v. B/E Aero., Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004). Direct evidence is defined as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Id.* at 1086 (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). It is evidence that "if believed, proves [the] existence of [a] fact without inference or presumption." *Id.* (quoting *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)).

If a plaintiff presents sufficient evidence to establish a prima facie case, then the burden shifts to the Defendant to provide a "a legitimate, nondiscriminatory reason for its adverse actions. *Davidson v. CHSPSC LLC*, 861 Fed. Appx. 306, 311 (11th Cir. 2021). The Plaintiff must then establish that the Defendant's stated reason was false and that the real reason was discrimination. *Id*. This "pretext" can be shown by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the employer's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id.*

(quoting *Springer v. Convergys Customer Mgmt. Grp. Inc*., 509 F.3d 1344, 1348 (11th Cir. 2007)).

Significantly, Courts in the 11th Circuit hold that the *McDonnell Douglas* framework "is not, and was never intended to be the *sine qua non* for a plaintiff to survive summary judgment in an employment discrimination case." *Id*. (quoting *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011)). Such a plaintiff may survive summary judgment if he presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*. (quoting *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011)). Among "other things," this "mosaic" may consist of evidence showing "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systemically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (quoting *Lewis v. City of Union City, Ga*., 934 F.3d 1169, 1185 (11th Cir. 2019)).

The 11th Circuit Court of Appeals has held that the *McDonnell Douglas* framework does not govern claims of disability discrimination under the ADA, including failure to accommodate. *Nadler v. Harvey*, No. 06-12692, 2007 U.S. App. LEXIS 20272, at *28 (11th Cir. 2007). Therefore, on such claims, once the Plaintiff has proffered sufficient evidence to support a prima facie case, "summary judgment

is inappropriate." *Hollingsworth v. O'Reilly Auto. Stores, Inc.*, No. 4:13-CV-01623-KOB, 2015 U.S. Dist. LEXIS 10956, at *25 (N.D. Al. 2015).

**ADA Discrimination**

In the 11th Circuit, to establish a prima facie case of ADA discrimination, a plaintiff must show that he "(1) was disabled; (2) was a qualified individual; and (3) was discriminated against because of [his] disability." *Davidson*, 861 Fed. Appx. at 310. A "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 USCS § 12111(8). This requires a plaintiff to establish "either that he can perform the essential functions of his job *without* accommodation, or . . . that he can perform the essential functions of his job *with* a reasonable accommodation." *McKane v. UBS Fin. Servs.*, Inc., 363 Fed. Appx. 679, 681 (11th Cir. 2010) (emphasis added) (quoting *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)).

**Failure to Accommodate**

In the 11th Circuit, a failure by an employer to provide reasonable accommodation to a disabled person is itself a form of discrimination under the ADA "so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007). To establish a prima facie case of ADA discrimination by failure to

accommodate, a plaintiff must show that "(1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs*., Inc., 363 Fed. Appx. 679, 681 (11th Cir. 2010).

A "reasonable accommodation" is defined to include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 USCS § 12111(9).

A requested accommodation is "reasonable and required only if it enables the employee to perform an essential function of the job." *McKane*, Inc., 363 Fed. Appx. at 681 (quoting *Lucas v. W.W. Grainger, Inc*., 257 F.3d 1249, 1255 (11th Cir. 2001)). This is true, even if the employee has been able in the past to perform the essential functions of his job without accommodation. (See infra pp. 18-19).

**<u>ADA Retaliation</u>**

In the 11th Circuit, to establish a prima facie case of ADA retaliation in employment, a plaintiff must show that he (1) engaged in statutorily protected conduct, (2) suffered an adverse employment action, and (3) that there is a causal connection between the two. *Todd v. Fayette Cty. Sch. Dist*., 998 F.3d 1203, 1219

(11th Cir. 2021) (citing *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999)). Requesting an accommodation is protected activity so long as the Plaintiff has a good faith belief that he is entitled to the accommodation. *Jeter v. Dixie*, No. 1:13cv197-MEF, 2013 U.S. Dist. LEXIS 128185, at *10 (M.D. Al. 2013).

## IV. LEGAL ARGUMENT

### A. Plaintiff is a "Qualified Individual" Under the Law and Entitled to Reasonable Accommodation even Though he had Performed his job Without it.

Defendant argues to this Court that Plaintiff's request for the use of his service animal was "not a reasonable and required accommodation under the ADA because it was not necessary in order for Plaintiff to perform the essential functions of the fuel clerk position." (Defendant's Brief in Support of Defendant K-VA-T's Motion for Summary Judgment, p. 12). Defendant's argument on this point is without merit because the governing statutes and caselaw clearly establish that a Plaintiff is not ineligible for reasonable accommodation under the ADA simply because he has been able to perform the essential functions of his job without it.

Under the ADA, a "qualified individual" is defined as "an individual who, with *or without* reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 USCS § 12111(8) (emphasis added). The black letter law unambiguously contemplates a "qualified individual" who is able to perform the essential functions of his job even *without* an

accommodation. Defendant's argument to this Court would effectively render that language meaningless by requiring this Court to find that a disabled person who can perform his job without accommodation is *not* a qualified individual under the ADA.

Defendant further distorts the caselaw that they cite for this argument. Defendant recites the basic premise that "An accommodation is reasonable and necessary under the ADA only when it enables the employee to perform the essential functions of the position." (Defendant's Brief in Support of Defendant K-VA-T's Motion for Summary Judgment, p. 12). For this premise, Defendant cites to three cases: *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010); *Holly v. Clairson Industries*, LLC, 492 F.3d 1247, 1255 (11th Cir. 2007); and *Lucas v. W.W. Grainger, Inc*., 257 F.3d 1249 (11th Cir. 2001). Defendant, however, omits a crucial phrase that explains the above premise:

> "If the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA. In other words, the ADA does not require the employer to eliminate an essential function of the plaintiff's job."

*Holly v. Clairson Industries*, LLC, 492 F.3d 1247, 1255 (11th Cir. 2007). *See also*, *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) ("Thus, if [the plaintiff] is unable to perform an essential function of his . . . job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA.").

Taken together, the statutory authority and the above-cited caselaw establish that a plaintiff must show that he is able to perform the essential functions of his job because the law does not require the employer to provide an accommodation that, even if granted, would not enable the employee to perform his job.

Defendant's main support for their argument is the decision of the 11th Circuit Court of Appeals in *D'Onofrio v. Costco Wholesale Corp*., 964 F.3d 1014, 1022 (11th Cir., 2020), *cert. denied*, 2021 U.S. LEXIS 826 (U.S. Feb. 22, 2021). In that case, the Court addressed the plaintiff, D'Onofrio's, argument that she had been denied reasonable accommodations related to her disability as a deaf person. *D'Onofrio,* 964 F.3d at 1021. D'Onofrio claimed that although she had had no issues communicating with her managers for "many years," she began to have communication issues with a new general manager in 2012. *Id.* at 1016. The Court interpreted this to mean that the communication issues were "new" and related solely to the new manager. *Id*. at 1017.

D'Onofrio made two requests for accommodations related to the communication issues with the new manager: (1) that the new manager be transferred, and (2) that all the other managers be trained on "deaf culture." *Id*. The Court noted that "D'Onofrio did not ask . . . for any other specific accommodation that might help her improve her communications with [the new manager]." *Id*. The employer "responded appropriately to D'Onofrio's two requests." *Id*. at 1024.

The employer denied the request to transfer the new manager, which the Court declared a "legally permissible response" given that both the EEOC and 11th Circuit caselaw hold that such an action is not a reasonable accommodation. *Id*. Nevertheless, the employer promised D'Onofrio that it would work to improve the communication with the new manager and followed that up with the installation of specialized equipment in the workplace to aid in her communication with all managers. *Id*. In response to the second request, the employer agreed to organize deaf-culture training. *Id*.

D'Onofrio argued that these actions by her employer were not reasonable accommodations because she had requested "alternative accommodations that were not granted." *Id*. at 1028. The Court, however, noted that "D'Onofrio cites no evidence to show that she requested alternative accommodations that went unfulfilled." *Id*. In fact, the Court ultimately affirmed the holding of the district court "because D'Onofrio cannot point to a 'specific instance in which she needed an accommodation and was denied one." *Id*. at 1032 (quoting *Batson v. Salvation Army*, 897 F.3d 1320, 1326 (11th Cir. 2018)).

In the present case, Defendant's main proposition from the *D'Onofrio* case is that "if an employee does not require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation . . . ." *D'Onofrio,* 964 F.3d at 1022. Defendant does not, however, point this Court to the

two cases cited by the *D'Onofrio* as support for that proposition. The two 11th Circuit decisions cited by the *D'Onofrio* Court both involved plaintiffs who had failed to prove that they had a "physical impairment that substantially limited one or more of her major life activities." *Hilburn v. Murata Elecs. N. Am., Inc*., 181 F.3d 1220, 1229 (11th Cir. 1999). *See also, Albright v. Columbia County Bd. of Educ*., 135 Fed. Appx. 344, 345 (11th Cir. 2005) ("The district court correctly found that [Plaintiff] did not meet the first definition of disability because her condition did not substantially limit a major life activity."). A narrow reading of the *D'Onofrio* decision on this point is not only warranted based upon the cases cited by the *D'Onofrio* court, it is the only reading that does not bring the *D'Onofrio* decision into conflict with other case law in this jurisdiction. (See infra pp. 18-19).

Unlike in *D'Onofrio*, Mr. Batten did not suddenly develop brand new problems at work related to his disability. Mr. Batten pushed himself to fulfill his job requirements with Defendant despite his disabilities causing him constant pain and causing him to fall on numerous occasions throughout his employment. (Plaintiff's Statement of Additional Material Facts, ¶ 7-10). Furthermore, unlike in *D'Onofrio*, Mr. Batten in fact did request a "specific accommodation that might help" with his problems related to his disability. (Plaintiff's Statement of Additional Material Facts, ¶ 25-27).

An employer may be obligated to provide a reasonable accommodation to an employee even if the employee has been able to perform the essential functions of his job without accommodation. *Hollingsworth v. O'Reilly Auto. Stores, Inc*., No. 4:13-CV-01623-KOB, 2015 U.S. Dist. LEXIS 10956, at *27 (N.D. Al. 2015). *See also, Reaves v. Nexstar Broad., Inc*.,[7] 327 F. Supp. 3d 1352, 1373 (D. Or. 2018) ("[A]n employer may be obligated to provide an accommodation that may prevent a condition from worsening even though the employee could perform the essential functions of the job without the accommodation."); *Nawrot v. CPC Int'l*, 259 F. Supp. 2d 716 (N.D. Ill. 2003) (court could not conclude as a matter of law on summary judgment that breaks were not a reasonable accommodation for a diabetic employee to perform the essential functions of his job when without them, the employee might collapse and be unable to perform the job at all); *Branson v. West*, No. 97-C-3538, 1999 U.S. Dist. LEXIS 7343 at *10-12 (N.D. Ill. May 11, 1999) (paraplegic employee whose use of a wheelchair was causing fatigue and other physical ailments requested reasonable accommodation of a service dog).

In the Hollingsworth case, the plaintiff brought a claim for failure to accommodate under the ADA. *Hollingsworth,* No. 4:13-CV-01623-KOB, 2015 U.S. Dist. LEXIS 10956, at *1. The defendant sought summary judgment arguing that the

[7] *Reaves v. Nexstar Broad, Inc., Nawrot v. CPC Int'l, and Branson v. West are* attached as part of the collective **Exhibit H,** which is being filed herewith.

plaintiff "did not need an accommodation because he was able to perform the essential functions of his job without an accommodation." *Id*. at *26. The Court noted that although the plaintiff was able to perform the essential functions of his job, "doing so caused him significant pain . . . ." *Id*. at 27. The Court stressed that an employer "cannot avoid its obligation to provide a reasonable accommodation to [an employee] simply because he was able to endure the pain of performing his job." *Id*. The Court found that this created a genuine issue of material fact for trial. *Id*. at 28.

In the present case, Mr. Batten pushed himself to fulfill his job requirements with Defendant despite his disabilities causing him constant pain and causing him to fall on numerous occasions throughout his employment. (Plaintiff's Statement of Additional Material Facts, ¶ 7-10). The record is clear that Mr. Batten is a "Qualified Individual" because he could have performed the essential functions of his position with accommodation. (Plaintiff's Statement of Additional Material Facts, ¶ 77).

For all of the aforementioned reasons, Defendant's argument that Mr. Batten is not entitled to accommodation because he had done without accommodation in the past is completely without merit. There exists a genuine issue for trial and Defendant's Motion for Summary Judgment on this issue must be denied.

**B. Defendant Failed to Engage in the Interactive Process.**

Defendant argues, from the case of *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278 (11th Cir. 1997), that Mr. Batten's actions caused a

"breakdown" of the interactive process and not Defendant's. (Defendant's Brief in Support of Defendant K-VA-T's Motion for Summary Judgment, p. 12-14). It is worth noting that in the *Stewart* case, the plaintiff there caused a breakdown in the interactive process by refusing all five of the accommodations offered by her employer without providing "any substantive reasons as to why [the accommodations] were unreasonable given her medical needs." *Stewart*, 117 F.3d at 1286-87.

That fact alone significantly distinguishes the present case. Here, Defendant offered Mr. Batten one, and only one, accommodation in the form of a transfer to the USCAN attendant position. (Plaintiff's Statement of Additional Material Facts, ¶ 32). Mr. Batten did not simply refuse to accept the solitary accommodation offered by the Defendant; he explained why his medical condition, including his diagnosis of Complex Regional Pain Syndrome and his gait instability, would not allow him to work a full standing position like the USCAN attendant. (Plaintiff's Statement of Additional Material Facts, ¶ ¶ 33-36).

Furthermore, Defendant has admitted that at no time did anyone discuss or make any plan to offer Mr. Batten a modification of the USCAN attendant position to address Mr. Batten's stated stability issues. (Plaintiff's Statement of Additional Material Facts, ¶ ¶ 43-44). This is the case even though after Mr. Batten confirmed that he could not physically perform an all standing position like the USCAN

attendant, he told Defendant "I guess, at this time, I have to wait for whatever you guys come up with . . . ." (Plaintiff's Statement of Additional Material Facts, ¶ 37). Even after the Defendant placed Mr. Batten on a personal leave of absence, Defendant never reached out to Mr. Batten to have any further discussions regarding possible accommodations.

Viewing the facts in the light most favorable to the non-movant, a reasonable jury could find that the Defendant's offer of one "accommodation" to Mr. Batten that it admits did not even address Mr. Batten's physical needs (see infra pp. 22-23) was a failure to make "reasonable efforts" regarding possible accommodations. Therefore, this creates a genuine issue for trial and Defendant's Motion for Summary Judgment on this issue must be denied.

**C. Plaintiff's Requested Accommodation was Reasonable and Posed no Burden, Undue or Otherwise, to Defendant.**

Defendant argues that Mr. Batten was not entitled to the accommodation he "particularly desired"—only a reasonable accommodation. (Defendant's Brief in Support of Defendant K-VA-T's Motion for Summary Judgment, p. 14). There is ample evidence in the record from which a reasonable jury could conclude that Mr. Batten's requested accommodation was not only *a* reasonable accommodation, but perhaps the *only* reasonable accommodation.

Under the applicable regulations pertaining to the ADA, a "service animal" is defined as "any dog that is individually trained to do work or perform tasks for the

benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 CFR § 36.104. This includes animals that provide "physical support and assistance with balance and stability to individuals with mobility disabilities." *Id*. Mr. Batten has testified that his service animal was specifically trained to assist him, by detecting panic attacks, assisting him with stability, and helping him to recover if he falls. (Plaintiff's Statement of Additional Material Facts, ¶ ¶ 25-27).

The Defendant understood that Mr. Batten's request for the use of his service animal related to the anxiety, isolation, and stability related to his disability and that any accommodation would need to address those issues. (Plaintiff's Statement of Additional Material Facts, ¶ ¶ 65-66). Donnie Meadows, the man who made the decision to deny Mr. Batten's request, testified that the USCAN attendant position was offered to Mr. Batten to address his "need for stability," (Plaintiff's Statement of Additional Material Facts, ¶ 68), but the Defendant, through its corporate representative testified that Defendant knew that without modification, the USCAN attendant position would not address Mr. Batten's stability concerns. (Plaintiff's Statement of Additional Material Facts, ¶ 69).

There is absolutely no evidence in the record to establish that Mr. Batten's use of his service animal would have constituted an undue hardship on Defendant. Defendant has admitted that at no time was such a determination ever made much

less communicated to Mr. Batten. (Plaintiff's Statement of Additional Material Facts, ¶ 54). Furthermore, before the request was ultimately denied, Mr. Batten was permitted to perform his job as the fuel clerk for a full week alongside his service animal, and Defendant admitted that it caused no issues. (Plaintiff's Statement of Additional Material Facts, ¶ ¶ 56-57). The Store Manager, Gary Richards, could not think of any reason why it would be a problem for Mr. Batten, as the fuel clerk, to have his service animal with him in the kiosk. (Plaintiff's Statement of Additional Material Facts, ¶ 55). And the man who made the decision to deny Mr. Batten's request even testified that he had absolutely no problem with Mr. Batten's use of his service animal. (Plaintiff's Statement of Additional Material Facts, ¶ 52).

Viewing the facts in the light most favorable to the non-movant, a reasonable jury could find that Mr. Batten's requested accommodation was reasonable and that it would not have caused an undue hardship on Defendant. Therefore, this creates a genuine issue for trial and Defendant's Motion for Summary Judgment on this issue must be denied.

**D. A Reasonable Jury Could Conclude that Defendant Retaliated Against Plaintiff for Requesting an Accommodation of his Disability.**

There is sufficient evidence in the record to establish a prima facie case of ADA retaliation. The first element requires proof of statutorily protected conduct. Mr. Batten requested a disability accommodation, which is statutorily protected conduct. *See Jeter v. Dixie*, No. 1:13cv197-MEF, 2013 U.S. Dist. LEXIS 128185, at

*10 (M.D. Al. 2013). The Second element requires proof of an adverse employment action. Mr. Batten was placed on a leave of absence and then terminated from his job. (Plaintiff's Statement of Additional Material Facts, ¶ 75). The third and final element requires proof of a causal link between the first two elements. Mr. Batten's being placed on leave was in connection to his request for the use of his service dog and specifically the Defendant's denial of that request. (Defendant's Statement of Material Facts, ¶ 38). And Mr. Batten's termination was for his failure to return from that leave. (Plaintiff's Statement of Additional Material Facts, ¶ 75).

A reasonable jury could conclude that there was a causal connection between Mr. Batten's firing and his initial request for accommodation. As such, this creates a genuine issue for trial and Defendant's Motion for Summary Judgment on this issue must be denied.

## V. CONCLUSION

Viewing the evidence in the light most favorable to the non-moving party and resolving all reasonable doubts in favor of the non-moving party, there is more than sufficient evidence in the record from which a reasonable jury could find in favor of the Plaintiff on the asserted claims. The record before this Court therefore establishes genuine disputes as to material facts. As such, Plaintiff respectfully asserts that Defendant's Motion for Summary Judgment must be denied.

Respectfully submitted,

**MASSEY & ASSOCIATES, P.C.**

*/s/ R. Ethan Hargraves* *
R. Ethan Hargraves, GA No. 793839
6400 Lee Highway, Suite 101
Chattanooga, TN 37421
Ph: 423.697.4529, F: 423.634.8886
ethan@masseyattorneys.com
*Attorney for Plaintiff*
**by signature above, counsel certifies that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of May 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

**MASSEY & ASSOCIATES, P.C.**

*/s/ R. Ethan Hargraves*
R. Ethan Hargraves