**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**AT ROME**

| | | |
|---|---|---|
| **CHRISTOPHER MATTHEW BATTEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 4:22-cv-00179** |
| | ) | |
| **v.** | ) | **JURY DEMANDED** |
| | ) | |
| **K-VA-T FOOD STORES, INC. d/b/a FOOD CITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS WHICH PRESENT AN ISSUE FOR TRIAL**

Plaintiff, Christopher Matthew Batten, by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1B, submits this Statement of Additional Disputed Material Facts.

1. Matthew Batten was involved in a horrific motorcycle crash in 2014. (Batten Affidavit[1] ¶ 2).
2. The crash caused Mr. Batten to need dozens of surgeries to install hardware and screws throughout the right side of his body. (Batten Affidavit ¶ 3).

[1] All references to "Batten Affidavit" are to the Affidavit of Christopher Matthew Batten, attached as **Exhibit A** to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which is being filed herewith.

3. Eventually, the injuries he suffered in the crash caused Mr. Batten to have to have his right arm amputated. (Batten Affidavit ¶ 4).
4. Mr. Batten has a neurostimulator implant for pain. (Batten Dep[2]. 59:12-60:6).
5. Matthew Batten needs a job with a chair and the ability to sit down because of his condition. (Batten Dep. 20:24-21:19).
6. Mr. Batten has an altered gait as a result of his condition. (Batten Dep. 21:5-11).
7. During the almost three years that Mr. Batten worked for Food City, he was able to perform the essential functions of his position, but doing so caused him constant daily pain. Furthermore, performing the essential functions of his job put him at risk for falling and injuring himself because of the effects that his disabilities have on his ability to ambulate. (Batten Affidavit ¶ 17).
8. Parts of Mr. Batten's job with Defendant were particularly painful to perform because of his condition. (Batten Dep. 29:6-19).
9. On multiple occasions while performing his job for Defendant, Mr. Batten has stumbled and fallen. (Batten Dep. 31:20-32:13, 84:6-20).

---

[2] All references to "Batten Dep." are to the deposition of Christopher Matthew Batten, which was taken on January 11, 2023. Cited excerpts from this deposition are attached as **Exhibit B** to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which is being filed herewith.

10. Mr. Batten's difficulty in performing some tasks of his job remained consistent during his employment with Defendant. (Batten Dep. 34:20-25).
11. Working in the fuel kiosk gave Mr. Batten the needed opportunity to sit or stand as needed for his condition. (Batten Dep. 35:6-12).
12. During the time that Mr. Batten worked at Defendant's Store #701, he was accustomed to taking a one-hour break so that he could go home, lie down, and charge his TENS unit. (Batten Dep. 48:12-49:7).
13. On one occasion, Linda Santana, the HRC at Defendant's Store #701, told Mr. Batten that, instead of getting his one-hour break, he had to be back in 15 to 20 minutes. (Batten Dep. 49:8-10).
14. Within a couple of days after that, Mr. Batten spoke to Calvin Johnson, the Store Manager of Store #701, and Mandy Hester, the Head Cashier about what Ms. Santana had done. (Batten Dep. 49:19-24).
15. Mr. Batten told them "I can't do this." (Batten Dep. 49:22-23).
16. Within about a month, Mr. Batten transferred to Store # 241 where his number of shifts was reduced from four to three. (Batten Dep. 50:5-24).
17. Mr. Batten never applied for any positions inside Defendant's store because he could not physically do them. (Batten Dep. 51:18-22).

18. Mr. Batten had put in his request for a service dog around the beginning of 2017, before he started working for Defendant. (Batten Dep. 60:19-25, 86:1-6).

19. Gary Richards, the store manager, was aware that Mr. Batten was taking leave from work to obtain a dog. (Richards Dep[3]. 71:9-16).

20. Mr. Batten informed Defendant of his plan to return to work with his service dog after completing the service dog training camp. (Batten Dep. 62:6-18).

21. On August 6, 2021, Mr. Batten met with Mr. David Ellison and Gary Richards. (Batten Affidavit ¶ 5).

22. During that meeting, Mr. Ellison asked Mr. Batten about his ability to do his job. (Batten Dep. 69:11-14).

23. In that August 6 meeting, Mr. Batten told Mr. Ellison that he had issues related to anxiety, isolation, and stability. (Batten Affidavit ¶ 6).

24. In that August 6 meeting, Mr. Batten told Mr. Ellison that he had fallen "maybe five times" while at work because of the stability issues caused by the

[3] All references to "Richards Dep." are to the deposition of Gary Richards, which was taken on January 12, 2023. Cited excerpts from this deposition are attached as **Exhibit D** to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which is being filed herewith.

extensive hardware in the right side of his body. (Batten Affidavit ¶ 7; Ellison Dep.[4] 36:1-15).

25. In that August 6 meeting, Mr. Batten told Mr. Ellison that his service animal can detect when Mr. Batten is beginning to have a "lock down panic attack" and can assist him with that. (Batten Affidavit ¶ 8).

26. In that August 6 meeting, Mr. Batten told Mr. Ellison that his service animal provided stability to prevent falls and also was there to help him get back up if necessary. (Batten Affidavit ¶ 9; Ellison Dep. 36:18-23, 37:4-10).

27. In fact, Mr. Batten's service dog is specifically trained to help him as a "stabilizer" and to help him get back up if he falls. (Batten Dep. 85:9-17).

28. If an employee is injured in a fall, that can interfere with the employee's ability to do his job. (Meadows Dep[5]. 94:20-22).

29. The decision to deny Mr. Batten's request for the use of his service dog was made between August 6 and August 12, 2021. (Ellison Dep. 42:18-24).

[4] All references to "Ellison Dep." are to the deposition of David Gary Ellison, which was taken on January 11, 2023. Cited excerpts from this deposition are attached as **Exhibit C** to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which is being filed herewith.

[5] All references to "Meadows Dep." are to the deposition of Donnie Meadows, which was taken on January 27, 2023. Cited excerpts from this deposition are attached as **Exhibit E** to Plaintiff's Statement of Additional Material Facts Which Present an Issue for Trial, which is being filed herewith.

30. On August 12, 2021, Mr. Batten met with Mr. David Ellison and Gary Richards. (Batten Affidavit ¶ 10).

31. In that August 12 meeting, Mr. Ellison told Mr. Batten that the request for his service animal was being denied. (Batten Affidavit ¶ 11).

32. In that August 12 meeting, Mr. Ellison offered Mr. Batten a position inside the store in the USCAN Cashier position to help with Mr. Batten's anxiety. (Batten Affidavit ¶ 12).

33. The USCAN position did not accommodate Mr. Batten's instability issues related to his disability. (Richards Dep. 56:3-6).

34. In response to the offer of the USCAN Cashier position, Mr. Batten told Mr. Ellison that he has screws and hardware throughout the right side of his body as well as Complex Regional Pain Syndrome. (Batten Affidavit ¶ 13).

35. Mr. Batten told Mr. Ellison that "standing for an extended period of time doesn't work." (Batten Affidavit ¶ 14).

36. Mr. Batten told Mr. Ellison that he could not physically perform the USCAN Cashier position. (Batten Affidavit ¶ 15).

37. Before the August 12, 2021, meeting ended, Mr. Batten told Mr. Ellison "I guess, at this time, I have to wait for whatever you guys come up with . . . ." (Batten Affidavit ¶ 16).

38. The Gas 'N' Go fuel clerk position was the only position offered by Defendant that allowed Mr. Batten to sit and stand as needed for his disability. (Richards Dep. 56:7-10).

39. Without modifications, the USCAN Attendant position is an all-standing position that does not utilize a chair or stool. (Richards Dep. 55:2-7, 57:2-5; Ellison Dep. 45:3-5; Meadows Dep. 71:9-13; Food City 30(b)(6) Dep.[6] 58:23-59:2).

40. Mr. Batten did not give Defendant an ultimatum. Mr. Batten said that the USCAN position would not work for him because he could not physically do it and could not "be on his feet for prolonged periods of time." (Ellison Dep. 45:6-16, 47:18-23, 51:15-20).

41. Mr. Batten made it abundantly clear that he had a physical condition that would prevent him from standing for long periods of time in the USCAN Attendant position. (Food City 30(b)(6) Dep. 61:3-7; 65:19-23).

42. At no time did Defendant offer to modify the USCAN position to allow Mr. Batten the use of a chair, stool, or other assistive device. (Food City 30(b)(6) Dep. 59:6-10, 61:8-62:7; Ellison Dep. 45:24-46:1).

[6] All references to "Food City 30(b)(6) Dep." are to the deposition of Food City's Corporate Representative Sherrell Lyon, Jr., which was taken on March 3, 2023. Cited excerpts from this deposition are attached as **Exhibit F** to Plaintiff's Statement of Additional Material Facts Which Present an Issue for Trial, which is being filed herewith.

43. At no time did David Ellison have any discussion with anyone about supplying Mr. Batten with a chair or stool to use in the USCAN position. (Ellison Dep. 47:24-48:11).

44. Defendant never had any plan or intention to offer Mr. Batten a stool, chair, cane or other assistive device in the USCAN Attendant position. (Food City 30(b)(6) Dep. 63:9-24; Ellison Dep. 46:5-9).

45. Donnie Meadows was the Defendant's Vice President of Human Resources. (Meadows Dep. 12:7-9).

46. As of August 2021, Mr. Meadows was the one in charge of Defendant's HR department and responsible for Defendant's compliance with federal laws and regulations. (Meadows Dep. 19:25-20:11).

47. Mr. Meadows made the ultimate decision to deny Mr. Batten's request for the use of his service animal. (Meadows Dep. 40:4-17).

48. Mr. Meadows admitted that Mr. Batten was a "qualified employee" under Defendant's ADA policy. (Meadows Dep. 42:21-43:12).

49. Mr. Meadows stated that a "qualified employee" was "eligible for a reasonable accommodation if there was a need." (Meadows Dep. 43:13-21).

50. Mr. Meadows admitted that the decision to deny Mr. Batten the use of his service animal was not made based on a finding that it would have constituted an undue burden to Defendant. (Meadows Dep. 43:22-44:6).

51. Neither Mr. Meadows nor anyone else at Food City ever made the determination that Mr. Batten's use of the service dog would constitute *any* burden on Food City, undue or otherwise. (Meadows Dep. 45:12-19).

52. In fact, Mr. Meadows stated that he had absolutely no problem with Mr. Batten's use of his service animal. (Meadows Dep. 44:23-45:1).

53. Mr. Meadows testified that the reason he denied Mr. Batten's use of his service animal was that Defendant "could meet the need that Mr. Batten had requested assistance to through another accommodation." (Meadows Dep. 44:7-11).

54. Prior to denying Mr. Batten's request for the use of his service dog, Food City never made or communicated a determination that Mr. Batten's use of his service dog would cause an undue hardship on Food City. (Food City 30(b)(6) Dep. 39:7-20).

55. The Store Manager, Gary Richards, could not think of any reason why it would be a problem for Mr. Batten, as the fuel clerk, to have his service animal with him in the kiosk. (Richards Dep. 29:25-30:7).

56. Prior to Mr. Batten's request being formally denied, Mr. Batten was allowed to bring his service dog to work with him for about a week. (Richards Dep. 37:7-16, 40:25-41:10).

57. Mr. Batten worked for a full week with his service dog without incident before Defendant decided to deny his request to have the service dog. (Richards Dep. 54:3-6).

58. Defendant did not reach out to Mr. Batten after initiating Mr. Batten's personal leave of absence to engage in any further discussion regarding possible accommodations. (Meadows Dep. 84:3-14).

59. It is Food City's policy to provide a reasonable accommodation to disabled employees when it does not cause any undue hardship on the company. (Food City 30(b)(6) Dep. 25:3-7).

60. Defendant testified that if Mr. Batten thought the use of his service animal was an appropriate accommodation, then Defendant considered it to be an appropriate accommodation. (Food City 30(b)(6) Dep. 40:19-25).

61. Defendant admits that an employee can work a job and do all of the things that they're supposed to do, but still have a need for an accommodation. (Food City 30(b)(6) Dep. 49:1-4).

62. Defendant did not believe that Mr. Batten was falsifying his need for an accommodation. (Food City 30(b)(6) Dep. 49:1-12).

63. Defendant admits that Mr. Batten's having worked his job for over two years without an accommodation did not make him ineligible for an accommodation. (Food City 30(b)(6) Dep. 49:13-16).

64. Defendant testified with regard to Mr. Batten's having worked his job for over two years without an accommodation, "I don't -- I don't think that's the reason that [his request] was being denied." (Food City 30(b)(6) Dep. 49:17-20).

65. Defendant understood that Mr. Batten's request for a service animal as it pertained to his disability related to his anxiety, isolation, and stability. (Food City 30(b)(6) Dep. 57:6-10).

66. Defendant understood that any proposed accommodation would need to address Mr. Batten's anxiety, isolation, and stability. (Food City 30(b)(6) Dep. 57:11-15).

67. Defendant had no reason to doubt that Mr. Batten's service animal helped him with his anxiety, isolation, and stability. (Meadows Dep. 99:13-22).

68. Mr. Meadows testified that Defendant offered Mr. Batten the alternative accommodation of the USCAN position to "meet his need for stability." (Meadows Dep. 45:20-46:2).

69. Defendant knew, however, that without modification, the USCAN Attendant position would not address Mr. Batten's stability concerns. (Food City 30(b)(6) Dep. 62:8-12; Richards Dep. 56:3-6).

70. After Mr. Batten informed Defendant that the USCAN position was not appropriate because he couldn't physically stand all the time, Defendant never

responded with any proposed modification to the USCAN position. (Meadows Dep. 100:21-101:6).

71. Mr. Batten did nothing to prevent Defendant from offering him a modification to the USCAN position that would have addressed his stability concerns. (Meadows Dep. 101:11-15).

72. Defendant informed Mr. Batten that he could not return to work with his service animal. (Lyons Dep[7]. 39:4-12).

73. After the August 18, 2021, meeting, Mr. Batten had called Gary Richards to ask if he could return to work with his service animal. (Ellison Dep. 60:8-25).

74. Mr. Richards told Mr. Batten that he could not return to work with his service animal. (Ellison Dep. 60:8-25).

75. Mr. Batten was terminated by Defendant effective February 14, 2022, for failing to return from leave. (Ellison Dep. 62:6-63:16).

76. Defendant selected a non-disabled employee to fill Mr. Batten's position as the Fuel Clerk after he was terminated. (Food City 30(b)(6) Dep. 70:12-19).

---

[7] All references to "Lyons Dep." are to the deposition of Sherrell Lyon, Jr., which was taken on January 12, 2023. Cited excerpts from this deposition are attached as **<u>Exhibit G</u>** to Plaintiff's Statement of Additional Material Facts Which Present an Issue for Trial, which is being filed herewith.

77. Having his service animal with him in his work as the Fuel Clerk at Food City would have helped him to perform the essential functions of his job. (Batten Affidavit ¶ 18).

Respectfully submitted,

**MASSEY & ASSOCIATES, P.C.**

*/s/ R. Ethan Hargraves*
R. Ethan Hargraves, GA No. 793839
6400 Lee Highway, Suite 101
Chattanooga, TN 37421
Ph: 423.697.4529, F: 423.634.8886
ethan@masseyattorneys.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of May 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

**MASSEY & ASSOCIATES, P.C.**

*/s/ R. Ethan Hargraves*
R. Ethan Hargraves