**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**AT ROME**

| | | |
|---|---|---|
| **CHRISTOPHER MATTHEW BATTEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 4:22-cv-00179** |
| | ) | |
| **v.** | ) | **JURY DEMANDED** |
| | ) | |
| **K-VA-T FOOD STORES, INC. d/b/a** | ) | |
| **FOOD CITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSES TO PLAINTIF'S STATEMENT OF ADDITIONAL MATERIAL FACTS WHICH PRESENT AN ISSUE FOR TRIAL**

Plaintiff, Christopher Matthew Batten, by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1B, submits this Statement of Additional Disputed Material Facts.

1. Matthew Batten was involved in a horrific motorcycle crash in 2014. (Batten Affidavit ¶ 2).

   **ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

2. The crash caused Mr. Batten to need dozens of surgeries to install hardware and screws throughout the right side of his body. (Batten Affidavit ¶ 3).

**ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

3. Eventually, the injuries he suffered in the crash caused Mr. Batten to have to have his right arm amputated. (Batten Affidavit ¶ 4).

   **ANSWER**: **Admitted for purposes of the pending Motion for Summary Judgment.**

4. Mr. Batten has a neurostimulator implant for pain. (Batten Dep. 59:12-60:6).

   **ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

5. Matthew Batten needs a job with a chair and the ability to sit down because of his condition. (Batten Dep. 20:24-21:19).

   **ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

6. Mr. Batten has an altered gait as a result of his condition. (Batten Dep. 21:5-11).

   **ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

7. During the almost three years that Mr. Batten worked for Food City, he was able to perform the essential functions of his position, but doing so caused him constant daily pain. Furthermore, performing the essential functions of

his job put him at risk for falling and injuring himself because of the effects that his disabilities have on his ability to ambulate. (Batten Affidavit ¶ 17).

**ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

8. Parts of Mr. Batten's job with Defendant were particularly painful to perform because of his condition. (Batten Dep. 29:6-19).

   **ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

9. On multiple occasions while performing his job for Defendant, Mr. Batten has stumbled and fallen. (Batten Dep. 31:20-32:13, 84:6-20).

   **ANSWER: OBJECTION on the following grounds (1) The evidence cited does not support the statement of fact. Rather the evidence cited reflects Plaintiff fell into a kiosk "couple of times" and tripped over a toolbox, neither of which were communicated to Food City. (Batten Dep. 84: 6-23, See Exhibit 1, p. 84); and (2) the statement of fact is not relevant to the pending Motion for Summary Judgment because it is unrelated to whether the service dog would have prevented the falls cited above.**

10. Mr. Batten's difficulty in performing some tasks of his job remained consistent during his employment with Defendant. (Batten Dep. 34:20-25).

**ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

11. Working in the fuel kiosk gave Mr. Batten the needed opportunity to sit or stand as needed for his condition. (Batten Dep. 35:6-12).

**ANSWER: Admitted.**

12. During the time that Mr. Batten worked at Defendant's Store #701, he was accustomed to taking a one-hour break so that he could go home, lie down, and charge his TENS unit. (Batten Dep. 48:12-49:7).

**ANSWER: OBJECTION in that (1) the statement of fact is not material to the pending Motion for Summary Judgment and (2) for clarification, the one-hour break mentioned in the citation was Plaintiff's *lunch* break.**

13. On one occasion, Linda Santana, the HRC at Defendant's Store #701, told Mr. Batten that, instead of getting his one-hour break, he had to be back in 15 to 20 minutes. (Batten Dep. 49:8-10).

**ANSWER: OBJECTION in that the statement of fact as stated is not material to the pending Motion for Summary Judgment.**

14. Within a couple of days after that, Mr. Batten spoke to Calvin Johnson, the Store Manager of Store #701, and Mandy Hester, the Head Cashier about what Ms. Santana had done. (Batten Dep. 49:19-24).

**ANSWER: OBJECTION in that the statement of fact as stated is not material to the pending Motion for Summary Judgment.**

15. Mr. Batten told them "I can't do this." (Batten Dep. 49:22-23).

**ANSWER: OBJECTION in that the statement of fact as stated is not material to the pending Motion for Summary Judgment**.

16. Within about a month, Mr. Batten transferred to Store # 241 where his number of shifts was reduced from four to three. (Batten Dep. 50:5-24).

**ANSWER: OBJECTION in that the statement of fact as stated is not material to the pending Motion for Summary Judgment.**

17. Mr. Batten never applied for any positions inside Defendant's store because he could not physically do them. (Batten Dep. 51:18-22).

**ANSWER: OBJECTION because this allegation of fact is not material to the pending Motion for Summary Judgment**.

18. Mr. Batten had put in his request for a service dog around the beginning of 2017, before he started working for Defendant. (Batten Dep. 60:19-25, 86:1-6).

**ANSWER: OBJECTION because this allegation of fact is not material to the pending Motion for Summary Judgment.**

19. Gary Richards, the store manager, was aware that Mr. Batten was taking leave from work to obtain a dog. (Richards Dep. 71:9-16).

**ANSWER: OBJECTION because this allegation of fact is not material to the pending Motion for Summary Judgment**.

20. Mr. Batten informed Defendant of his plan to return to work with his service dog after completing the service dog training camp. (Batten Dep. 62:6-18).

**ANSWER: OBJECTION because this allegation of fact is not material to the pending Motion for Summary Judgment.**

21. On August 6, 2021, Mr. Batten met with Mr. David Ellison and Gary Richards. (Batten Affidavit ¶ 5).

**ANSWER:** Admitted.

22. During that meeting, Mr. Ellison asked Mr. Batten about his ability to do his job. (Batten Dep. 69:11-14).

**ANSWER:** Admitted.

23. In that August 6 meeting, Mr. Batten told Mr. Ellison that he had issues related to anxiety, isolation, and stability. (Batten Affidavit ¶ 6).

**ANSWER:** Admitted.

24. In that August 6 meeting, Mr. Batten told Mr. Ellison that he had fallen "maybe five times" while at work because of the stability issues caused by the extensive hardware in the right side of his body. (Batten Affidavit ¶ 7; Ellison Dep. 36:1-15).

**ANSWER**: Admitted for purposes of the Motion for Summary Judgment.

25. In that August 6 meeting, Mr. Batten told Mr. Ellison that his service animal can detect when Mr. Batten is beginning to have a “lock down panic attack” and can assist him with that. (Batten Affidavit ¶ 8).

ANSWER: **OBJECTION on the following grounds: Defendant OBJECTS to Plaintiff’s submitted Affidavit in order to include statements of fact which are not already contained in the record. There is no testimony in Plaintiff’s deposition concerning alleged “panic attacks.”**

26. In that August 6 meeting, Mr. Batten told Mr. Ellison that his service animal provided stability to prevent falls and also was there to help him get back up if necessary. (Batten Affidavit ¶ 9; Ellison Dep. 36:18-23, 37:4-10).

ANSWER: **Admitted.**

27. In fact, Mr. Batten’s service dog is specifically trained to help him as a “stabilizer” and to help him get back up if he falls. (Batten Dep. 85:9-17).

ANSWER: **Admitted**.

28. If an employee is injured in a fall, that can interfere with the employee’s ability to do his job. (Meadows Dep. 94:20-22).

ANSWER: **OBJECTION because this allegation of fact is not material to the pending Motion for Summary Judgment and it is not a statement of fact but is a hypothetical assertion.**

29. The decision to deny Mr. Batten's request for the use of his service dog was made between August 6 and August 12, 2021. (Ellison Dep. 42:18-24).

ANSWER: **Admitted**.

30. On August 12, 2021, Mr. Batten met with Mr. David Ellison and Gary Richards. (Batten Affidavit ¶ 10).

**ANSWER:** Admitted.

31. In that August 12 meeting, Mr. Ellison told Mr. Batten that the request for his service animal was being denied. (Batten Affidavit ¶ 11).

**ANSWER:** Admitted.

32. In that August 12 meeting, Mr. Ellison offered Mr. Batten a position inside the store in the USCAN Cashier position to help with Mr. Batten's anxiety. (Batten Affidavit ¶ 12).

**ANSWER:** Admitted.

33. The USCAN position did not accommodate Mr. Batten's instability issues related to his disability. (Richards Dep. 56:3-6).

**ANSWER: OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position but Plaintiff insisted on his service dog as the only**

**accommodation and Plaintiff refused to consider alternative reasonable accommodations options.**

34. In response to the offer of the USCAN Cashier position, Mr. Batten told Mr. Ellison that he has screws and hardware throughout the right side of his body as well as Complex Regional Pain Syndrome. (Batten Affidavit ¶ 13).

**ANSWER: Admitted.**

35. Mr. Batten told Mr. Ellison that "standing for an extended period of time doesn't work." (Batten Affidavit ¶ 14).

**ANSWER: Admitted**.

36. Mr. Batten told Mr. Ellison that he could not physically perform the USCAN Cashier position. (Batten Affidavit ¶ 15).

**ANSWER: Admitted**.

37. Before the August 12, 2021, meeting ended, Mr. Batten told Mr. Ellison "I guess, at this time, I have to wait for whatever you guys come up with . . . ." (Batten Affidavit ¶ 16).

**ANSWER: OBJECTION because this allegation of fact is not material to the pending Motion for Summary Judgment**.

38. The Gas 'N' Go fuel clerk position was the only position offered by Defendant that allowed Mr. Batten to sit and stand as needed for his disability. (Richards Dep. 56:7-10).

**ANSWER: OBJECTION because the statement is stated as an issue, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, but Plaintiff insisted on his service dog and refused to consider alternative reasonable accommodations options.**

39. Without modifications, the USCAN Attendant position is an all-standing position that does not utilize a chair or stool. (Richards Dep. 55:2-7, 57:2-5; Ellison Dep. 45:3-5; Meadows Dep. 71:9-13; Food City 30(b)(6) Dep. 58:23-59:2).

**ANSWER: OBJECTION because the statement is stated as an issue, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position, but Plaintiff insisted on his service dog and refused to consider alternative reasonable accommodations options.**

40. Mr. Batten did not give Defendant an ultimatum. Mr. Batten said that the USCAN position would not work for him because he could not physically do it and could not "be on his feet for prolonged periods of time." (Ellison Dep. 45:6-16, 47:18-23, 51:15-20).

ANSWER: **OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position, but Plaintiff insisted on his service dog and refused to consider alternative reasonable accommodations options.**

41. Mr. Batten made it abundantly clear that he had a physical condition that would prevent him from standing for long periods of time in the USCAN Attendant position. (Food City 30(b)(6) Dep. 61:3-7; 65:19-23).

**ANSWER: Admitted.**

42. At no time did Defendant offer to modify the USCAN position to allow Mr. Batten the use of a chair, stool, or other assistive device. (Food City 30(b)(6) Dep. 59:6-10, 61:8-62:7; Ellison Dep. 45:24-46:1).

**ANSWER: OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position, but Plaintiff insisted on his service dog and refused to consider alternative reasonable accommodations options. Plaintiff "made it very**

**clear" to Food City "that if he did not have this dog, then he wasn't going to work." (Food City 30(b)(6) Dep. p. 59:6-14; See Exhibit 2, p. 59)**

43. At no time did David Ellison have any discussion with anyone about supplying Mr. Batten with a chair or stool to use in the USCAN position. (Ellison Dep. 47:24-48:11).

**ANSWER**: **OBJECTION because the statement is stated as an issue, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position, but Plaintiff insisted on his service dog and refused to consider alternative reasonable accommodations options. (See Doc. 43, Pl's Response to Def. Stmt. Of Facts, ¶¶ 22, 23, 24, 25).**

44. Defendant never had any plan or intention to offer Mr. Batten a stool, chair, cane or other assistive device in the USCAN Attendant position. (Food City 30(b)(6) Dep. 63:9-24; Ellison Dep. 46:5-9).

**ANSWER: OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position, but Plaintiff insisted on his service dog and refused to consider**

**alternative reasonable accommodations options. (See Doc. 43, Pl's Response to Def. Stmt. Of Facts, ¶¶ 22, 23, 24, 25 and 34).**

45. Donnie Meadows was the Defendant's Vice President of Human Resources. (Meadows Dep. 12:7-9).

**ANSWER:** Admitted.

46. As of August 2021, Mr. Meadows was the one in charge of Defendant's HR department and responsible for Defendant's compliance with federal laws and regulations. (Meadows Dep. 19:25-20:11).

**ANSWER: Admitted.**

47. Mr. Meadows made the ultimate decision to deny Mr. Batten's request for the use of his service animal. (Meadows Dep. 40:4-17).

**ANSWER:** Admitted.

48. Mr. Meadows admitted that Mr. Batten was a "qualified employee" under Defendant's ADA policy. (Meadows Dep. 42:21-43:12).

**ANSWER:** Admitted.

49. Mr. Meadows stated that a "qualified employee" was "eligible for a reasonable accommodation if there was a need." (Meadows Dep. 43:13-21).

**ANSWER:** Admitted.

50. Mr. Meadows admitted that the decision to deny Mr. Batten the use of his service animal was not made based on a finding that it would have constituted an undue burden to Defendant. (Meadows Dep. 43:22-44:6).

**ANSWER: Admitted, however, Meadows further testified the Defendant could meet Plaintiff's need for requested assistance through other accommodations rather than the specific accommodation Plaintiff was requesting. (Exhibit 3, Meadows Dep. 44:7-22).**

51. Neither Mr. Meadows nor anyone else at Food City ever made the determination that Mr. Batten's use of the service dog would constitute *any* burden on Food City, undue or otherwise. (Meadows Dep. 45:12-19).

**ANSWER: Admitted.**

52. In fact, Mr. Meadows stated that he had absolutely no problem with Mr. Batten's use of his service animal. (Meadows Dep. 44:23-45:1).

**ANSWER: Admitted.**

53. Mr. Meadows testified that the reason he denied Mr. Batten's use of his service animal was that Defendant "could meet the need that Mr. Batten had requested assistance to through another accommodation." (Meadows Dep. 44:7-11).

**ANSWER:** Admitted.

54. Prior to denying Mr. Batten's request for the use of his service dog, Food City never made or communicated a determination that Mr. Batten's use of his service dog would cause an undue hardship on Food City. (Food City 30(b)(6) Dep. 39:7-20).

**ANSWER:** Admitted.

55. The Store Manager, Gary Richards, could not think of any reason why it would be a problem for Mr. Batten, as the fuel clerk, to have his service animal with him in the kiosk. (Richards Dep. 29:25-30:7).

**ANSWER:** Admitted.

56. Prior to Mr. Batten's request being formally denied, Mr. Batten was allowed to bring his service dog to work with him for about a week. (Richards Dep. 37:7-16, 40:25-41:10).

**ANSWER: OBJECTION because this allegation of fact is not material to the pending Motion for Summary Judgment**.

57. Mr. Batten worked for a full week with his service dog without incident before Defendant decided to deny his request to have the service dog. (Richards Dep. 54:3-6).

**ANSWER: OBJECTION because this allegation of fact is not material to the pending Motion for Summary Judgment**.

58. Defendant did not reach out to Mr. Batten after initiating Mr. Batten's personal leave of absence to engage in any further discussion regarding possible accommodations. (Meadows Dep. 84:3-14).

**ANSWER**: **OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, but Plaintiff insisted on his service dog and refused to consider alternative reasonable accommodations options. Plaintiff "made it very clear" to Food City "that if he did not have this dog, then he wasn't going to work." (Food City 30(b)(6) Dep. p. 59:6-14; See Exhibit 2, p. 59.)**

59. It is Food City's policy to provide a reasonable accommodation to disabled employees when it does not cause any undue hardship on the company. (Food City 30(b)(6) Dep. 25:3-7).

**ANSWER:** Admitted.

60. Defendant testified that if Mr. Batten thought the use of his service animal was an appropriate accommodation, then Defendant considered it to be an appropriate accommodation. (Food City 30(b)(6) Dep. 40:19-25).

**ANSWER**: **Admitted**.

61. Defendant admits that an employee can work a job and do all of the things that they're supposed to do, but still have a need for an accommodation. (Food City 30(b)(6) Dep. 49:1-4).

**ANSWER: OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c).)**

62. Defendant did not believe that Mr. Batten was falsifying his need for an accommodation. (Food City 30(b)(6) Dep. 49:1-12).

**ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

63. Defendant admits that Mr. Batten's having worked his job for over two years without accommodation did not make him ineligible for an accommodation. (Food City 30(b)(6) Dep. 49:13-16).

**ANSWER: Admitted for purposes of the pending Motion for Summary Judgment.**

64. Defendant testified with regard to Mr. Batten's having worked his job for over two years without an accommodation, "I don't -- I don't think that's the reason that [his request] was being denied." (Food City 30(b)(6) Dep. 49:17-20).

**ANSWER: Admitted.**

65. Defendant understood that Mr. Batten's request for a service animal as it pertained to his disability related to his anxiety, isolation, and stability. (Food City 30(b)(6) Dep. 57:6-10).

**ANSWER: Admitted.**

66. Defendant understood that any proposed accommodation would need to address Mr. Batten's anxiety, isolation, and stability. (Food City 30(b)(6) Dep. 57:11-15).

**ANSWER: Admitted.**

67. Defendant had no reason to doubt that Mr. Batten's service animal helped him with his anxiety, isolation, and stability. (Meadows Dep. 99:13-22).

**ANSWER: Admitted.**

68. Mr. Meadows testified that Defendant offered Mr. Batten the alternative accommodation of the USCAN position to "meet his need for stability." (Meadows Dep. 45:20-46:2).

**ANSWER: OBJECTION. The citation does not support the statement of fact. Mr. Meadows testified that Food City was "simply trying to meet his need for stability" in offering alternative accommodations to Plaintiff but Plaintiff was "close-minded" to such discussions; Plaintiff "would only accept the use of the service dog as an accommodation." (Exhibit 3, Meadows Dep. 45: 20-46:2.**

69. Defendant knew, however, that without modification, the USCAN Attendant position would not address Mr. Batten's stability concerns. (Food City 30(b)(6) Dep. 62:8-12; Richards Dep. 56:3-6).

**ANSWER: OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position but Plaintiff insisted on his service dog as the only accommodation and Plaintiff refused to consider alternative reasonable accommodations options.**

70. After Mr. Batten informed Defendant that the USCAN position was not appropriate because he couldn't physically stand all the time, Defendant never responded with any proposed modification to the USCAN position. (Meadows Dep. 100:21-101:6).

**ANSWER: OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position but Plaintiff insisted on his service dog as the only**

**accommodation and Plaintiff refused to consider alternative reasonable accommodations options.**

71. Mr. Batten did nothing to prevent Defendant from offering him a modification to the USCAN position that would have addressed his stability concerns. (Meadows Dep. 101:11-15).

**ANSWER: OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, including modifications to the USCAN position, but Plaintiff insisted on his service dog as the only accommodation and Plaintiff refused to consider alternative reasonable accommodations options.**

72. Defendant informed Mr. Batten that he could not return to work with his service animal. (Lyons Dep. 39:4-12).

**ANSWER:** Admitted.

73. After the August 18, 2021, meeting, Mr. Batten had called Gary Richards to ask if he could return to work with his service animal. (Ellison Dep. 60:8-25).

**ANSWER:** Admitted.

74. Mr. Richards told Mr. Batten that he could not return to work with his service animal. (Ellison Dep. 60:8-25).

**ANSWER:** Admitted.

75. Mr. Batten was terminated by Defendant effective February 14, 2022, for failing to return from leave. (Ellison Dep. 62:6-63:16).

**ANSWER:** Admitted.

76. Defendant selected a non-disabled employee to fill Mr. Batten's position as the Fuel Clerk after he was terminated. (Food City 30(b)(6) Dep. 70:12-19).

**ANSWER: OBJECTION because the cited testimony does not support the factual allegation. The deposition testimony cited reflects Food City's 30(b)(6) witness was not aware as to whether the individual who filled the Fuel Clerk has a disability.**

77. Having his service animal with him in his work as the Fuel Clerk at Food City would have helped him to perform the essential functions of his job. (Batten Affidavit ¶ 18).

**ANSWER**: **OBJECTION because the statement is stated as an issue or legal conclusion, rather than a statement of fact. (LR 56.1(B)(1)(c). Defendant was prepared to discuss alternatives to Plaintiff's service dog for reasonable accommodations, but Plaintiff insisted on his service dog as the only accommodation and Plaintiff refused to consider alternative reasonable accommodations options.**

Respectfully submitted,

*/s/ Howard B. Jackson*
Howard B. Jackson, BPR #021316
Wimberly Lawson Wright Daves & Jones, PLLC
550 W. Main Street, Suite 900
Knoxville, TN 37902
Ph: 865.546.1000 F: 865.546.1001
hjackson@wimberlylawson.com
*Attorney for K-VA-T Food Stores, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2023, I electronically filed the foregoing Defendant's Response to Plaintiff's Statement of Material Facts with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following:

**Ethan Hargraves**
**Massey and Associates, P.C.**
**6400 Lee Highway, Suite 101**
**Chattanooga, TN 37421**
**ethan@masseyattorneys.com**

*/s/ Howard B. Jackson*
Howard B. Jackson